## ALEXANDER SCOTT and another *v.* JOHN THORP and another.

Where there is a reference to a master simply as to whether the complainants can cause to be made to the defendants a perfect title, clear of incumbrances, the master, in strictness, is not bound to report any thing more than that; but it is more satisfactory that he should show how, or in what manner, the complainants could cause a good title to be made.

When a person holds a contract for purchase of real estate, and he sells the property and agrees that he will cause to be executed and delivered a good and sufficient warrantee deed, the last buyer cannot object on the ground that the title is in another; and he will be bound to take a deed in the name of such other. This case is not within the principle making void purchases where the seller is not a *bona fide* contractor and is speculating with other persons property.

An important exhibit or document, not read but marked before an examiner, and not used on the hearing, was brought in afterwards before a master on a reference as to title, and admitted as evidence by the court.

Where a seller had not delivered an abstract of his title, and had not cleared off a judgment, he was not allowed his costs on a bill for specific performance, although he succeeded in the suit.

Both parties being considered in the wrong, on a bill for specific performance, each one had to bear his own costs, except the costs of exception to the master's report of a good title, which the vendee had to bear.

*Nov.* 16.
1835.

SCOTT
*v.*
THORP.

*Vendor
and Ven-
dee.
Master's
Report on
Title.
Evidence.
Costs.*

BILL for specific performance. The complainants held a contract of purchase, (as it afterwards appeared,) and on the strength of it, and without having had any deed of the property, ventured to sell it to the defendants, agreeing that they would cause to be executed and delivered a good and sufficient warrantee deed. The case now came before the court on the master's report of title.

THE VICE CHANCELLOR :—The exceptions to the master's report on title are not well founded. The evidence, I consider, sustains the report, though it would have been more satisfactory if the master had gone farther and shown how or in what manner the complainants would cause a good and perfect title to be made to the defendants, whether by delivery of the deed which is made an exhibit, dated the fifteenth day of June one thousand eight hundred and thirty two, executed by Willard and wife and Gardner and wife, or by some other act or deed. The order of reference, however, following the language of the agreement, only required the master to report whether the complainants could cause to be made to the defendants a perfect title, clear of incumbrances ; and, in strictness, he was not bound to report any thing more. If more should be now required, in order to enable the court to make its decree, the course would be to. send the cause back to the master for further information : 1 Newland Ch. Pr. 205 ; *Gibson* v. *Clarke,* 2 Ves. & B. 103 ; *Anonymous,* 3 Madd. R. 495 ; *Hyde* v. *Wroughton,* Ib. 280.

But this seems to be unnecessary in the present case. The testimony taken before the master shows that the title to which his report refers, and on which it rests, is the title in Willard and Gardner, and that the title which the complainants could cause to be made is the same which the delivery and acceptance of that deed would confer upon the defendants. There can be no mistake on this point from the testimony, and the court is warranted in decreeing, at once, the delivery of the deed in fulfilment of the complainants' part of the agreement. The objection that the legal title was not in the complainants, and does not come through them to the defendants, is of no avail. The agreement is not that the complainants would convey to the defendants

1835.

SCOTT
v.
THORP.

by a deed which the complainants should execute, but that they would cause to be executed and delivered a good and sufficient warrantee deed ; and it would seem to be a compliance with the contract for them to obtain a conveyance from a third person or persons directly to the defendants. Nor is this case within the principle which forbids a court of equity to interfere and compel a purchaser to take where the seller is not a *bona fide* contractor but undertakes to speculate upon the sale of another's estate. As, where a person takes on himself to contract for the sale of an estate, and is not the absolute owner of it, nor has it in his power, by the ordinary course of law or equity, to make himself so, though the owner should offer to make the seller a title, yet equity will not force the buyer to take, because there is no mutuality in the remedy, since the seller might set up, to a bill for specific performance, the impossibility of his making a title : 1 Sugden on Vendors, 9 Edit. 207. The complainants in the present case were not in that situation ; though not absolute owners, yet it appears they hold a contract for the purchase of the lot in question from Gardner and previous to making the contract of sale to the defendants. They, therefore, had an equitable interest and a beneficial ownership which this court might have enforced in their behalf. Hence, they were *bona fide* contractors, and the case is not such as to show that the remedy was not mutual. It is insisted that the court cannot notice the fact of any such agreement by which the complainants were the purchasers or had any interest in the property which they undertook to sell to the defendants. The evidence of it is for the first time brought forward at the hearing on the exceptions to the master's report. The deposition of the subscribing witness to the agreement between the complainants and Gardner was taken before the examiner, and the agreement was marked and duly certified as an exhibit ; but, by some inadvertence, the deposition and exhibit were not produced on the first hearing of the cause, nor before the master on the reference. The omission, however, does not preclude the complainants from the benefit of the testimony in this, subsequent, stage of the cause : *Dale* v. *Roosevelt*, 6 John. C. R. 256 ; *Higgins* v. *Mills*, 5 Russ. R. 287. The

court is now at liberty to take it into consideration, and to give it the same effect as evidence which it would have had if read on the former occasion. This evidence removes the objection to the complainants' right to a specific performance, although the title should be good.

The only question that remains, then, is as to the costs of the suit? Although the complainants succeed in this suit, it does not necessarily follow that they are entitled to costs against the defendants. They furnished no abstract of title previous to filing the bill. At that time too there was a *judgment* outstanding, which was apparently an incumbrance, and which they took no steps to remove, though they offered to leave enough of the purchase money to cover the amount. The defendants were excusable in standing out until the title could be investigated, and under the circumstances they ought not to be made to pay the costs of the suit: *Wilson* v. *Clapham,* 1 Jacob & W. 36. Nor do I think the defendants are entitled to costs against the complainants. The fairest ground on which to put it is that both parties have, in some degree, been in the wrong ; and as to the costs of the suit generally, each party should bear their own : *Newall* v. *Smith,* 1 Jacob & W. 263. The defendants, however, should not have taken exception to the master's report, and the costs consequent on this step the defendants must pay. According to the stipulation contained in the order of the first day of October, one thousand eight hundred and thirty-two, by which Richard S. Williams was discharged from the sale with his costs out of the fund paid into court, the defendant must bear those costs, amounting to sixty-three dollars and sixty one cents.

Decree, overruling exceptions and confirming the master's report of title, that the title deeds and papers made exhibits before the master be delivered to the defendants as evidence of their title, and that they pay six hundred and fifty dollars purchase money and the costs of the hearing on the exceptions. The money remaining in court to be paid over on account of the purchase money and those costs.