BLAKENEY *VS* BLAKENEY.

1. At common law an action could not be maintained by an executor or administrator, to recover damages for an injury done to either the person or property of the testator or intestate.

2. But the statute of 4 Edw. 3, c. 7, authorises an action by an executor, for a trespass done to the goods and chattels of the testator, and the remedy was further extended by statute 25 Edw. 3, c. 5, and to administrators, by the statute 31 Edw. 3, c. 11.

3. And by the equity of the statute, an executor or administrator might have a *quare impedit* for a disturbance in the lifetime of the testator or intestate, and the personal representative of a termor might maintain ejectment, where testator had a lease for years, or from year to year, whether the ouster was before or after his death.

4. To construe a statute according to its equity, is to give an effect to it, according to the intention of the law-makers, as indicated by its terms and purposes, and therefore—

5. The statute of 1826, (Aik. Dig. 1st ed. 260,) does not authorise the commencement of an action, *de novo*, by the personal representative, for an injury done in the life-time of the testator or intestate.

Error to the Circuit court of Wilcox county.

Trespass to try titles, and for damages by an administrator. At the Spring term of the Circuit court of Wilcox county, eighteen hundred and thirty-six, the plaintiff in error, administratrix, &c., declared against the defendant in error, for that, said defendant, on

the first day of January, eighteen hundred and thirty-four, and in the life-time of the intestate, with force and arms, &c., broke and entered a certain close of the intestate, situate, lying and being in the county aforesaid, to wit: the east half of the south east quarter of section nineteen, of township eleven, of range nine, in the district of Cahawba—and then and there cut down, prostrated and destroyed the trees then and there growing, and with horses, mules, oxen and ploughs, ploughed up and subverted the earth and soil of the said close; and then and there broke down and destroyed the fences of the intestate, of and belonging to the close—and then and there kept possession of said close, for a long space of time, to wit, for the space of one year, without the leave or license of the intestate, and against his will; and hindered and prevented the intestate from having the use, benefit and enjoyment thereof, in so large and ample a manner as he might, and otherwise would have done, &c.

And whereas, also, defendant, afterwards, on the same day, with force and arms, broke and entered a certain other close of the intestate, to wit, the East half, &c., and ejected, expelled, put out and amoved said intestate, from his occupation and possession thereof—and kept and continued him so expelled and amoved, for a long space of time, to wit, from the day aforesaid, to the first day of January, eighteen hundred and thirty-five, and during that time, took and received to the use of him, said defendant, all the issues and profits of said close, being of the yearly value of two hundred dollars; whereby the intestate lost the issues and profits of the close, and was deprived of the use and means of cultivating the same; and other wrongs, &c., to the damage of intestate, in his life-time, and of the administratrix, &c.,—and therefore she sues, and brings her letters of administration, &c.

To both the above counts, the defendant filed a general demurrer, and plaintiff joined in demurrer.

And at the Fall term of the same court, eighteen hundred and thirty-six, the defendant's demurrer to plaintiff's declaration, was argued and considered by the court, and it seemed to the court, that the demurrer should be sustained. It was therefore considered by the court, that the defendant should go thence, without day, and recover of the plaintiff, his costs expended, for which he might have execution, &c.

From this judgment there was a writ of error, and the plaintiff in error assigned, that the court erred in sustaining the demurrer,—for which cause she prayed that the judgment might be reversed.

*Peck*, for plaintiff in error said—I insist that this action was well brought by the plaintiff, as administratrix, by virtue of the act of eighteen hundred and twenty-six.

This is a remedial statute, and is to be construed liberally. The court will look to the equity of the statute, for the purpose of sustaining the action.

Among the many rules laid down, in order to form a right judgment, whether a case be within the equity of a statute, is, to suppose the law-maker present, and to ask him the question, did you intend to comprehend this case ? Then, give yourself such answer, as you imagine he, being an upright and reasonable man, would give. If this be, that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute.—*Bacon's Abr.*—*title Statute*, 1, 6.

Now, if this question could be fairly propounded to the makers of this statute, can there be a doubt but their unanimous answer would be—we did intend to comprehend this case ?

The words of the 13 Eliz. 1, are "*circumspecte agatis de negotiis tam gentibus Episcopum Noroicensem;*" yet

this statute, although only the Bishop of Norwich be named, has been always extended by an *equitable* construction, to other bishops.—(See also, the 13 Eliz. declaring all leases by ecclesiastical bodies, for a longer term than *twenty-one* years, *void* : yet by an equitable construction of this statute, leases, though for a longer term, if by a Bishop, are not void during the Bishop's continuance in his See.—1 *Bl. Com.* 87, 88.)

So, also, the remedy given by the 9th Ed. 3, against executors, has been always extended, by an *equitable* construction, to administrators.

By the 22d section of the Judiciary act of September twenty-fourth, seventeen hundred and eighty-nine, appeals, in equity cases, are limited to a period of five years after the decree. In the case of *Thomas vs. Harver's heirs,* 10 *Wheaton*—the court decided, that a bill of review was comprehended within the equity of the provision, and would not be entertained after a lapse of five years.

Our act of 1826, makes no distinctions between actions of trespass to *real* and *personal* property—for injuries to either, revive to the representatives. " ALL actions of *trespass quare clausum fregit,* and actions of *trespass to recover for injuries to personal property,* may, if the plaintiff or plaintiffs die, be revived by his, her or their representatives."

Here is clearly no distinction made between injuries to *real* and *personal* property.

Now suppose a violent injury to be done to a valuble horse, or a favorite servant, by which they become perfectly useless, and the owner die, before he have time to bring his action,—may not the executor or administrator have a remedy for such injury, by virtue of the equity of this statute ? If they can not, the profession ought never again to boast, that law is the perfection of reason. If, in such a case, trespass may not be brought, no remedy can be had, and the wrong doer escapes without punishment.

Is the language of this statute too narrow, or the intention of the legislature too plain, to permit such an action? It seems to me, not. If, then, an action may be sustained, for an injury to personal property, in such a case, will not the same expression also give the action of trespass, *quare clausum fregit?*

The statute says ALL actions, &c. may, if the plaintiff or plaintiffs die, be revived. Now, is it too strained a construction of the language here employed, to say the legislature intended to embrace injuries or causes of action, which existed at the death of the party, as well as those for which an action had been actually commenced?

The use of the words "plaintiff or plaintiffs," could not have been employed, with the intent to admit the one and exclude the other: they are mere words of *identification*, to show, that the remedy should not *die with the party injured*, but *with the party who had done the injury;* that is, that an action of trespass could not be brought or revived, *against* an executor or administrator.

By the statute of 4 Edw. 3, the word *trespass*, only is used—yet, by an equitable construction of that statute, it has been extended to every description of injury to *personal* property, by which it has been rendered *less beneficial to the executor, whatever the form* of the action may be,—so that an executor, by virtue of that statute, may have *trover, case,* for an escape on mesne, or final process; an action of *ejectment,* for an ouster, in the life of the testator, and a *quare impedit.* 1 Chit. on Pl. ma. 58 ; 1 Wms. on Ex. 511 to 514; Croke's Eliz. 207; Toller on Ex. 433.

These are all actions of tort, but none of them are embraced within the ordinary meaning of the word "trespass;" yet the executor is entitled to these actions—and, the reason given in the two last named cases, is, because the damages belong to the executor

Our statute and the 4th Edw. 3d, are substantially

6p    15

the same, with this difference, that the statute of 4 Edw. 3, used the word "*trespass*" only, which was construed not to extend to trespass on *real estate*—that is, free-hold estates: and, is it not fair to presume, that this construction of that statute, induced our legislature to embrace *by name*, the action of trespass *quare clausum fregit*.

So, it is said the statute of 4 Edw. 3, does not extend to injuries done to the *person*, or to the *freehold* of the testator,—therefore, an executor or administrator shall not have actions of assault and battery, false imprisonment, slander, deceit. for diverting a water course, obstructing lights, or other actions of the like kind,— for such actions still die with the testator.—Wms. on Ex. vol. 1, p. 513. And, in accordance with this construction, it is said, in the next paragraph, that an executor shall not have an action of *trespass quare clausum fregit*, founded on a wrong done to the *freehold*. But, if the wrong was to an estate less than *freehold*, would not this authority give an action for it? If not, why is the word "*freehold*," used?

The same author, in the next page, settles this doubt:—he says, "where the testator is but tenant for years, or by extent, so that the *very estate* in the land, was to come and is to come to the executor, (together with *quicquid plantatur solo*,) the executor or administrator, it should seem, ought to have, together with the estate in the soil, the action to punish the trespasser on the soil.

If, in such case, the executor or administrator, has an action for such a wrong, it must be an action of trespass *quare clausum fregit*—for he could bring no other.

The same author then proceeds to say—"It is apparent, from authorities which have already been cited, that the *true test*, with respect to the right of action surviving to the executor or administrator, is not to be found, by referring to the consideration, whether the

action is founded in *tort*. But the rule, (says he) now established, is, that an action will not lie, for the personal representative, except in cases where some damage done to the personal estate can be stated on the record. Accordingly, it was held, in the case of *Chamberlin vs Williamson*, that an executor can not have an action, for a breach of promise of marriage to the deceased, where no special damage to the personal estate can be stated on the record.—2 Maule & Sel. 208; 1 Wms. on Ex. 516. But if special damage can be shewn, then the action can be sustained.

In this case, the gravamen is, breaking the *close*, expelling the deceased, and taking the rents and profits. The word "*close*," in an action of this kind, has a technical meaning, signifying the interest in the soil; and it is a sufficient description of the plaintiff's interest, however *temporary* that interest may be.—1 Chit. on Pl. 174, ma. If it be a term for years, or even a less estate, it is sufficiently described, by calling it a *close*. Under the pleadings in this case, the court will not stop to enquire whether the estate is a freehold, or less than a freehold. An injury to the personal estate is, therefore, sufficiently set out on the record.—The loss of the issues and profits was a clear injury to the personalty.

Again; the executor or administrator succeeds to all the *rights* of the testator or intestate, especially those which concern the personal estate, as technically distinguished from the real estate, and must necessarily be entitled to the proper actions to make those rights available.

The latter view of this case has been pressed, for the purpose of shewing, that a construction of our statute, that will sustain this action, is not as wide a a departure from its letter, as the construction of 4th Edw. 3d—giving the actions of trover, case, ejectment, *quare impedit*, &c.—none of which are embraced, except by the equity of that statute.

*Hopkins* and *Parsons*, contra.

COLLIER, C. J.—The plaintiff in error, as administratrix of Alfred Blakeney, deceased, brought an action of trespass *quare clausum fregit*, against the defendant, in the Circuit Court of Wilcox. On her writ, she indorsed, that the action was brought as well to recover damages, as to try titles.

The declaration contains two counts: the first charges, in addition to the breach, entry, &c. of the close of the plaintiff's intestate, in his life-time, that the defendant kept possession thereof, for the space of twelve months, and hindered and prevented the intestate, for that space of time, from occupying the same. The second count only varies from the first, in alleging the actual expulsion of the intestate, from the close broken and entered.

The declaration concludes, to the damage of the intestate, in his life-time, and to the plaintiff his administratrix.

To each count the defendant demurred, and, his demurrer being sustained, the plaintiff prosecutes a writ of error to this court.

Several points have been made, at the argument, which we deem it unnecessary to consider—and will confine our inquiries to an examination of the question, whether the plaintiff is entitled to maintain the the action she has brought.

It was a principle of the common law, that no action could be maintained, by an executor or administrator, to recover damages for an injury, done either to the person or property of his *testator* or *intestate* —the action died with the person—and this principle applied as well where the deceased was the aggressor, as where he was the party injured. This rule of *personalis actio moritur cum persona*, received considerable alteration by the *statute* of 4 Edw. 3 c. 7, entitled *de bonis asportatis, in vita testatoris*, the pream-

ble to which recites, that theretofore, executors have
not had actions for a trespass done to their testators,
as of the goods and chattels of the said testators, car-
ried away in their life, so that such trespasses have
remained unpunished, and enacts, "that the executor
in such cases, shall have an action against the trespas-
sers, and recover their damages in like manner as
they whose executors they be, should have had, if
they were living." The remedy given by this act is
further extended to executors of executors, by statute
25 Edw. 3, c. 5, and to administrators by the statute
31 Edw. 3, c. 11.

The statute of 4 Edw. 3, being remedial in its cha-
racter, has·always been liberally expounded in ad-
vancement of the object of the legislature; and though
the word *trespasses* only is employed, it has been held
to embrace other cases within the intention of the
statute.—*Emerson vs Emerson;*\* *Berwick vs Andrews.*†
So, by an equitable construction of the statute, it has
been determined that the executor or administrator
is not restricted in the form of action to be adopted,
but may prosecute any, by which an injury to the
personal estate of the testator, in his life-time, (which
lessens its value,) may be redressed.‡—*Williams vs
Carey.*§

And by the equity of the statute, an executor or
administrator may have a *quare impedit*, for a distur-
bance in the time of his testator or intestate. So, the
personal representative of a termor may maintain
ejectment, where the testator had a lease for years, or
from year to year, whether the ouster was before or
after the death.‖—*Doe vs Porter.*¶

. I have considered thus at length, the exposion of 4
Edw. 3, not because of its direct influence upon the

---

\* Sir W. Jones's Rep. 174.          §4 Mod. R. 403; 2 Bac. Ab. 445.
† 2 Ld. Raym. 974.          ‖1 Wms. Ex. 513.
‡ Latch, 168.          ¶3 Term Rep. 13.

case at bar, but to ascertain whether, by analogy, a construction may be placed upon our statute, which authorises the plaintiff to prosecute her suit. The act of our legislature, relied upon by the plaintiff, is in these words,—"All actions of trespass *quare clausum fregit*, and actions of trespass to recover damages for injuries to personal property, may, if the plaintiff or plaintiffs die, be revived by his, her or their representatives, in the same manner as actions on contracts."*

This act, though it changes the common law, is clearly remedial, and should receive a liberal interpretation—that is, should be extended beyond the literal import of its terms—if this be necessary to the effectuation of the end it contemplates, and to prevent a failure of the remedy it proposes. To determine the extent of its operation, we must ascertain its object.

By its terms, it gives to executors and administrators the right to revive certain actions of trespass, and is entitled, "An act to provide for reviving actions of trespass."†

The object, then, to be effected, is the revival of actions brought by a testator or intestate, in the name of a personal representative, and not the commencement of an action *de novo*. Reasons may have influenced the legislature in giving a remedy, in the one case, which it was unwilling to extend, in the other. In the former, the deceased had himself elected to seek redress, and should his suit abate by his death, his estate would be subjected to costs. In the latter, he had brought no action, and may have intended to waive the wrong.

These considerations, it is possible, may have influenced the legislature, in thus limiting the remedy.— Be this as it may, the construction contended for at

*Aik. Dig. 1st ed. 260.      †Aik. Dig. p. 17, no. 16.

the bar, cannot be given to it, unless we go, not only *ultra* the strict letter, but *contra* the letter also—which is inhibited by every just principle of construction.

The statute of 4 Edw. 3, never extended to executors of executors or administrators, (though these perhaps were embraced by an enlarged equity) hence, the enactment of the statutes of 25 and 31 Ed. 3. And our act, passed professedly to authorise the revival of actions, can not be held to give an authority to maintain an action originally; this would be, not to promote the intention of the legislature, but to go quite beyond it. The statute of the 4 Edw. 3, was enacted to afford a remedy in favor of an executor, by an original action for a wrong done to the personal estate of the testator in his life-time, and it has been rightfully determined, that it authorised any action, by which the injury to the personal estate could be repaired, on the ground, that they came within the equity of the statute.

To construe a statute according to its equity, is nothing more than to give effect to it, according to the intention of the law-makers, as indicated by its terms and purposes. Hence, it may either be extended or restrained, by an equitable construction; and it is held, that a case out of the mischief intended to be remedied by a statute, shall be construed to be out of the purview, though it be within the words of the statute.*

The intention of the act being so clearly manifested in its body, we scarcely deem it necessary to call in aid its title, which speaks with clearness its end. The title of a statute, we are aware, is an unsafe criterion, by which to determine its meaning; yet, in cases where the intent is not plain, it may slightly assist in removing ambiguities.

---

*Dwarris on Stat. 724—9th vol. Law Lib.

To conclude—the case before us, is one for which the legislature have failed to provide a remedy—perhaps designedly—but, whether this be so or not, we have no power to supply the omission; and, instead of extending the statute to embrace grievances not within its purview, we think it safer to say, in regard to such cases, with Mr Justice *Heath*, " The legislature is always at hand;" and if it be thought wise to give the remedy, its powers are ample.     We have consi-- dered this case, as it was considered at the argument, an action to recover damages, only: and, were it taken, as indicated by the indorsement on the writ, to be an action to try titles, the result would not be different.     The personal representative of a termor, for an ouster in his own time, may have an action; but such is not the present.

Our conclusion is, the plaintiff is not entitled to an action,—and the judgment is consequently affirmed.