Parker and Brooke, J.
concurred. Decree reversed, and cause remanded &c.
Before the above decree of reversal had been certified and transmitted by the clerk of this court to the circuit superiour court, but after the expiration of the term at which it was pronounced, namely, at the next ensuing term, Lane’s administrator presented a petition to this court, praying a rehearing, on the ground that the decree of this court touching the main point in controversy, was founded on a mistake in point of fact. That this court, regarding the first item of credit in the account stated in the commissioner’s report, of “James Lane in account with Lane Sf Towner,” where Lane was credited “ September 15.1817, By sundry goods, wares and merchandise, per inventory taken this day—48,456 dollars,” as having been taken from an entry to the same effect on the books of the partnership, had thence inferred a sale of the goods by Lane to I*ane 8f Toivner; by which sale, the goods became the joint property of the partnership, and Towner’s interest in them equal to that of Lane; so that Towner’s contribution of stock was equal to Lane’s, and consequently Towner was entitled to an equal share of the profits: whereas, in fact, there was no such entry on the books of the partnership as that found in the commissioner’s account; the commissioner having stated that particular account, in that form, not because he found such an account stated on the books, but because chance,llor Browne’s decree instructed and required him to state the account. That the true state of the facts had been ascertained by an actual reference to the books of the partnership; and the proof was exhibited to the court, that there was no such entry on the books; but if the court could not admit this proof, because it was no part of the record now here, yet a critical examination of the record itself would suffice to evince the truth of the case, and to *278 satisfy the court, that its decree was founded on a mis- .... _ _ take m point of fact.*
“ Parker, J. A motion has been wade to set aside decree in this cause, entered during the last term, and' for a rehearing, on the ground of judicial error in matter of fact: and the motion has been urged with great earnestness and ability.
Taking it for granted, that there may have been such error in the decree, the first inquiry is, can it be amended after the term has ended in which it was pronounced ? Decrees and judgments stand, in this respect, upon the same footing. With respect to decrees in the inferiour courts, the doctrine has long been well settled, that after the term has passed, the cause cannot be reheard in the same court, except upon bill of review. In this court, we have no proceeding analogous to that. We must determine the question upon principle and authority.
- It is just and expedient, that there should be some termination to litigation. Particular cases of hardship must yield to general rules of convenience. We must fix some period at which cases shall be considered as finally ended, or this court will be overwhelmed with applications for rehearing, and parties will be kept in continual uncertainty of their rights. Fix on any we may, individual injustice may be done, but upon the whole, the public good will be promoted, by avoiding the mischiefs of uncertainty and long protracted lawsuits. This is one of the chief reasons why we adhere to erroneous precedents. Whatever the period may be, it ought to be certain, well defined and inflexible ; or the evil is not remedied. If it depends on accidental circumstances, on the action of officers of the court, or *279 on matters in pais, depending on evidence, the rule itself is of little importance.
The rule, that a cause shall not be reheard after the term is ended, is a certain and invariable one, of easy and uniform application. Any other that has been suggested, and especially that which makes the action of this court to depend upon the certifying of its decree to the court below, or upon that court’s receiving and entering the decree, wants all the qualities of certainty, invariableness, equality and uniformity.
For these reasons, I should incline on principle to say, that the end of the term should be the end of the litigation, so far as this court is concerned ; and I think this rule is established by authority.
In England, it has been repeatedly held, that when judgment is once given and enrolled, no amendment is permitted at any subsequent term. See 3 Christian’s Blacks. Comm. 407. Adi the cases proceed upon that distinction. In Blackmore’s Case, 8 Co. 156.b 157.a it is said, that, at common law, the judges might amend as well their judgment as any part of the record &c. in the same term, for during the term, the record is in the breast of the judges, and not in the roll. In 1 Bac. Abr. Amendments and Jeofails. A. p. 145. it is laid down, that the record of a judgment is in the breast of the court all the same term, because it is a roll of that term, and so in the breast of the court during the whole term. So, in the case of The Parish of St. Clements v. The Parish of St. Andrews Holborn, 6 Mod. 287. Salk. 606. it was held, that the judgment of justices is in their breast, and alterable by them, all the same sessiotis. These decisions seem to me to have settled the doctrine in that country whence we derive the principles of our jurisprudence. Nor do I think, that the forbidding of alterations in the judgment of the court after the term, originated in the statute 11 Hen. 4. ch. 3. That statute did not prohibit them, but was, as I take it, only in *280 affirmance of the common law. Coke, Blackstone, and other writers, speak of amendments after the term not being allowed at common law; and in Chambers v. Moor, 2 Lev. 431. it is expressly affirmed, that such amendmentg COuld not be made at common law; citing the year book 4 Edw. 3. pi. 9. b. which was before the statute 11 Hen. 4. ch. 3.
Looking, next, to our own precedents, we have, first, the case of The Commonwealth v. Beaumarchais, 3 Call 107. 151. In that case, all the judges thought the decree of the court below erroneous as it stood, but being divided in opinion whether the contract should be settled by a scale of four for one or of five for one, a decree was entered, stating that the chancellor’s decree was reversed, but that on account of the division among the judges as to the scale of depreciation, no further decree could be made, since the case was not provided for by the act of assembly. But, at a subsequent term, the court being of opinion, that upon an equal division of the judges in the partial affirmance of the decree, it ought to have been partially affirmed, and that the cause still remained in the court undecided and yet defending, the decree was corrected. Now, whether the court was right or wrong in' saying that the former decree was interlocutory and not final, it is obvious it placed its control over the decree on that ground, and not on the ground of power to change the decree after the term : in truth, this ground is excluded by the reasons assigned.
In the case of Campbell v. Patterson, decided in March 1835, the court proceeded either on the ground of consent, or (what is more probable from the entry) on the ground that the court had no authority to hear the cause in the absence of retained counsel, necessarily otherwise engaged in the house of delegates, and that the cause had been heard by mistake, and against the rule established by the court in other cases; and consent having been in fact given for the reinstatement, it was *281 probably little considered. It seems, too, in that case 1 . .. the certificate had actually gone out; so that that aistinction will not avail.
In the case of Glass v. Baker, 6 Munf. 218. a motion for a rehearing being made at the next term, it was overruled; the court “ doubting, at least, its right to rehear a cause at a subsequent term, and thinking it best not to do it.”
Then we have the case of The Bank of Virginia v. Craig, 6 Leigh 399. 438. which strongly appealed to the justice of the court; for the sureties had not been heard, and. the question decided against them was coram non judice; yet this court unanimously overruled the motion for rehearing, on the ground that it “ could not now set aside the decree entered at the former term, whether it was prematurely entered, or whether it was objectionable on its merits, or not.”
Other instances have been mentioned at the bar, of the court’s adherence to this rule; but as they exist only in the recollection of counsel, and no entry was made on the record, I forbear to notice them. Enough appears to satisfy me, that the court has never intentionally departed from the rule of the english law, which I think is founded in wisdom and justice. If it is thought otherwise, let the legislature confer the power, and define its limits.
No distinction has ever been adverted to, of a decree being in the power of the court, as contradistinguished from its being in the breast of the judges; and we have seen what is meant by that expression : nor has any allusion ever been made to the certifying of the judgment or decree to the inferiour court, or to that court’s subsequent action on it.
I am of opinion, that this cause cannot be reheard; and so thinking, I purposely abstain from any consideration of its merits, as they may possibly (in consequence of the leave reserved to the parties, by the decree, to *282 except to the commissioner’s report) come again, in some form, before this court.
Brockenbrough, J. I concur in the opinion just expressed. I have always understood, that when the term of the court ends, the case is no longer within the breast of the court, but constitutes part of the unchangeable records of the court. If it is afterwards deemed to be within the discretion of the court to reopen the record, what limit is to be placed to that discretion ? Is the certificate of the clerk, which the statute directs to be transmitted to the clerk of the court whence the appeal was brought, to be taken as the termination of the cause here ? If so, very little relief' will be given to suitors whose causes have been erroneously decided here.' Each party who has gained his cause, will immediately apply for his certificate, and one or two days, instead of twenty, will be sufficient to furnish all the certificates. But if such a general demand be not made, then one rule will prevail in those cases where a long recess follows the termination of the term, and a different rule in cases where the ensuing recess is short. The rule at Leioisburg will not be the same as at Richmond. The suitors here whose causes are decided against them at the November or January term, may have them reopened: but the doors of the court will be closed against those unfortunate persons, against whom judgments or decrees have been rendered in the March or July term.
I cannot understand how the certificate of the clerk, or the transmission of it, can make the judgment or decree any more a part of the rolls of the court, than it was before. Even an execution is no part of the record of -a judgment; and as the clerk of this court issues no executions, his certificate of the judgment (which, when received by the clerk of the court below, and entered on the records of that court, will authorize an execu *283 tion) cannot be a part of the rolls of this court. • Nor can I perceive how the failure of the clerk to make out and transmit the certificate, can have the effect to retain within the power of the court, a cause which has been finally acted on, and which, but for that failure, w'ould have been out of its power. But if the discretion of this court is so large as to embrace cases in which the certificate of the clerk has not been issued, why should it not embrace cases in wdiich th¡e certificate has been transmitted, but is not yet entered on the record of the circuit court? Until it is so entered, no execution can issue, nor any further action be had on the judgment or decree. Are we to hear motions of this kind from parties who will bring proof that the certificate of our clerk, though issued, has not yet been recorded in the court below ?
Further, if the object of reopening the cause be to do justice in the particular case, why should we stop short of the actual termination of the cause by the prevailing party’s putting the fruit of the judgment into his pocket? The certificate is transmitted and recorded, the execution has issued, and a forthcoming bond has been taken ; but an execution has not yet been awarded on that bond. At that moment, a discovery is made, that the judgment or decree of this court is palpably erroneous : ought not this court, in the exercise of the discretion which is claimed for it, to reopen and review the cause, and correct its own mistakes ? Certainly it ought to do so, on the principles contended for. But wc have a recent and express authority that this cannot be done. In the case of The Bank of Virginia v. Craig, a decree was entered against the sureties in a guardian’s bond, who, although they were parties in the court of chancery, were neither appellants nor appellees in this court. An execution was issued; and mr. Hooe, one of the sureties, had given a forthcoming bond. He applied to this court for a rehearing at a subsequent term; and sure *284 ly, if the court had had the discretion which is now contended for, it would have been granted to him, for a case of greater hardship can hardly be imagined. Yet the court refused to rehear it, on the ground, that “ it could not now set aside the decree entered at the former term, whether it was prematurely entered, or whether it was objectionable on its merits, or not.”
I am for overruling the motion. In this particular case, I am satisfied, that little if any injury will be done to the appellee. The court, in its decision, established certain principles, growing out of the facts believed by it to be set forth in the commissioner’s report (which was not excepted to), and remanded the cause to the circuit superiour court, for further proceedings to be had therein according to the principles of the decree; but it reserved to both parties the right to take any exceptions to the reports of the commissioner, heretofore made, that they might have taken at any former period, consistent with the principles decided by the court. It seems to me, that under the decree it is still competent for the appellee to except, and to exhibit to the court below, a state of facts (if they exist) different from that which at present appears by the record. If those facts should be varied by the new evidence, the principles established by this court may not apply.
Cabell, J. This is an application, by the counsel for the appellee, to set aside an order of the last term, pronouncing a final decree, which has not yet been certified to the court below. The object proposed in setting aside the order is a reargument of the cause ; and the reargument is asked for on a suggestion, most respectfully made, that the court was mistaken in the supposed existence of an important fact, on which its decree was based, when, in truth, as is now alleged, no such fact is to be found on the record. And the application is resisted on the ground, that as the decree is *285 final, and the term expired, the court has no legal competency to reconsider the case, even although the decree may be palpably and grievously erroneous. I cannot accede to this broad proposition.
The time within which the courts will reconsider their judgments and correct their own errors, has, in my opinion, been regarded as involving a question of judicial discretion, rather than of strict legal power; a discretion to be regulated according to the requirements of justice. For we find that the practice of the courts in respect to this subject, although professed to be regulated by the common law, has been very different at different stages of our judicial history. Thus, Fitzherbert informs us, in his Nattira Brevium, p. 49. 50. that, in his day, “ error in the king's bench in the process, where it is the default of the clerks, shall be reversed in the same court by a writ of error sued by the party before the same justices; but not without suing of a writ of error, although it be the same term. But in the common pleas, after judgment given the same term, the justices may reverse their own judgments, upon error in the process, or for default of the clerks, without any writ of error sued forth ; but, in another term, the party ought to sue forth a writ of error thereupon, returnable into the king's bench. But of an error in law, which is the default of the justices, the same court cannot reverse the judgment by a writ of error, nor without a writ of error; but this error” (even although a mere interlocutory judgment, as I understand it) “ought to be redressed in another court, before other justices, by a writ of error.” Again, Blackstone says (vol. 3. p. 407.) “Formerly the suitors were much perplexed by writs of error brought upon very slight and trivial grounds, as misspellings and other mistakes of the clerks, all which might be amended at common law, while all the proceedings were in paper; for they were then considered as only in fieri, and therefore subject to the con *286 irol of the court. But when once the record was made UPJ ^ was formerly held, that by the common law no amendment could be permitted, unless within the very term in which the judicial act so recorded was done; por t]urjng tjje term the record is in the breast of the court; but afterwards it admitted of no amendment.” Thus we see, that in the earliest stages of the common law, the-court of king’s bench could not correct an error of that court, even during the same term, and though the error was the mere default of the clerk, without a writ of error; and that, as to an error in law in the judgment of the court itself, the same court could not correct it, even during the same term, by a writ of .error, nor without a writ of error.. In process of time, however, the common law was held to justify an amendment, even of an error in law in the judgment of the court, by mere motion, at any time during the same term, but not after the term. This was a great extension of the common law, by the mere action of the courts, without the authority of any statute. But even this did not satisfy the demands of public convenience. And we find that the courts proceeded still farther; for Blackstone adds—“But now the courts are become more liberal; and, where justice requires it, will allow of amendments at any time while the suit is depending, notwithstanding the record be made up and the term be past. For they at present consider the proceedings as in fieri till judgment is given; and therefore that, till then, they have power to permit amendments by the common law." It is true that he further adds—“But when judgment is once given and enrolled, no amendment is permitted in any subsequent term.” He here alludes, unquestionably, to final judgments. But this inhibition of the power of amending final judgments, after the term, would seem to be founded on the.statute of 11 Hen. 4. ch. 3. since Blackstone refers to that statute as the authority for the position. That statute de *287 dares, “ that the records and process of pleas real and personal, and of assizes of novel disseizin or mortdancestor, and certifications, and of others, whereof judgment is given and enrolled, or any thing touching such pleas, shall in nowise be amended nor impaired by new entering of the clerks, or by record, or any thing to be certified or testified, or commandment of any justice whatever, in no term after that such judgment in such pleas is given and enrolled.” But this statute is not in force here ; nor have we any similar statute. We are, therefore, at liberty to go as far as the principles of the common law, amended by the spirit of liberality in modern times, will carry us. It is admitted, that even a final judgment, pronounced on the gravest consideration, may be set aside, on mere motion, at any time during the term. This, possibly, may be as far as an inferiour court ought to go; for if an error has been committed by such court, it may be rectified by resorting to a superiour court. But this is the court of the last resort; and when it errs (as err it sometimes must, being human) its errors will be irreversible, unless it be allowed to correct them itself. It will correct its errors, if discovered during the term. Why shall it not do so afterwards ? What magical influence has the lapse of a day, or the expiration of a term, to sanctify error and perpetuate injustice ? There is no law for it, and reason revolts against it.
We have seen, that the inferiour courts thought, for a long time, that they had no power over interlocutory judgments and decrees, after the term. We have seen, that, without the sanction of any statute, they were afterwards induced by a regard to “ the requirements of justice,” to extend their power beyond the term. Upon the same principles, this court ought to extend its power of amending even final judgments, beyond the term; for otherwise there will be a denial of justice. This ought to be done in those cases at least, where, as in *288 this case, the judgment or decree has not been certified, an(l where, consequently, there can be no clashing of conflicting jurisdictions.
Again, this is a suit in chancery; and this court, in deciding it, sits as a court of chancery. Now, it will be recollected, that all inferiour courts of chancery, although they cannot, after the term, correct their own final decrees on mere motion, yet may do so by bill of review, long after the term. Shall an inferiour court be thus allowed to correct its own errors, rather than force the parties to the expense and inconvenience of seeking redress in a superiour court, and shall nothing be left to this, the court in the last resort, but to mourn that the injustice it has inadvertently committed is irremediable ? If this be so, it calls loudly for legislative interposition.
It is objected, that if this court were, at a subsequent term, to allow a cause to be reargued that had been finally decided at a preceding term, the frequency of such applications would obstruct the course of business, and would perpetuate litigation. I cannot think that such would be the result. Time cools the zeal of the unsuccessful counsel; and reflection more frequently weakens, than strengthens, his conviction that the court erred in deciding the cause against his client. I should therefore think, that motions for reargument would be less frequent after the term than during the term. The right to move for a reargument during the term, has always been exercised at the discretion of the counsel: yet, although I have been a member of this court for more than twenty years, I can confidently affirm, that there have not been as many as twenty applications for the reargument of causes.
It is objected, that thé practice of the court has been against the exercise of this power. I am free to admit that the leaning of the court has, generally, been that way. But I do not think it has been invariable. I do *289 not remember that any case has occurred, where, as in this case, the application was made before the judgment or decree had been certified. The case of Patterson v. Campbell is among the last where an application was made, after the term, to set aside the decree and grant a rehearing; and in that case, it is believed, the decree had been certified. The application was made on the ground that mr. Johnson had forgotten to mark his name on the docket, as counsel in the case; in consequence of which, it was taken up and decided in his absence. At the next term, on the application of mr. Johnson, stating these facts, the decree was set aside, and a re-argument directed. Now, if the forgetfulness of counsel to mark himself as such on the docket, be sufficient to break the spell of the expiration of the term, I cannot perceive why the conviction of the court that it has itself erred, should not produce the same effect.
Moreover, whatever may have been the practice of the court, it is competent to the court to change it, where it has not been prescribed by positive law.
Upon the whole, I am satisfied that we have the power to set aside the former decree, and grant a rehearing ; and that this is a case in which the power ought to be exercised. It might save much time and expense. But the party will not be without redress, even if the rehearing shall be refused. The decree provides, that when the case gets back to the court of chancery, any exceptions may be taken to the report of the commissioner, which might have been made at any former period. It will, therefore, be competent to either party to shew, that the commissioner was mistaken in the facts stated in his report; and if this be done, it will be the duty of the court of chancery to pronounce the law applicable to that new state of facts, without regard to the opinion which this court has pronounced upon a different state of facts.
*290 Brooke, J.
The orders of this court respecting any matter before it, are always in the power of the court, to be corrected or recalled, if necessary, until they are executed. They do not stand on the ground of ajudgment or decree, which is out of the power of the court, after the term at which it was entered, and after the order to certify it to the inferiour court has been executed. Until that is done, the order to certify it may be recalled at any time : when that order is executed, the court has no power to recall, and no process by which it can recall, the record, even though the decree of this court may not have been acted on in the inferiour court. Such was the rule adopted by this court in the case of The Commonwealth v. Beaumarchais. That case was argued, and the opinions of the judges delivered, in November 1801. The court directed the re-argument in May 1S03. The president, 'Pendleton, in delivering the opinion of the court, said—“ The court is not precluded from correcting the mistake in the former entry, since the record remains in court, and the cause ■undecided.” If the fact of the came being undecided was the reason why the court was not precluded from correcting the mistake, that might have been done by looking at its own order book. The other was evidently the ground: the record remained in court; the order to certify it to the court of chancery had not been executed ; there could be no conflicting decrees; the order to certify it could be recalled without the least inconvenience: and, therefore, the mistake in the decree could be corrected.
There are few cases reported on this point; and where a rehearing has been allowed, this ground, that the record remained in court, has not been stated. The cases of refusal to rehear have been the most numerous; and hardly any of them have been reported. The rehearing has been denied on one of two grounds; either that there was no error in the judgment or deoree, or *291 that the record had been sent out: but however that . . mny be, nothing in language can be plainer, than that the court in The Commonwealth v. Beaumarchais, procceded on the ground, that the order to certify the decree to the court of chancery noL having been executed, the record remained in court, and so the decree, being erroneous, might be corrected", and when judge Pendleton added, that the cause was undecided, all he could have meant was, that the decree was erroneous. Omissions in a decree may make it as erroneous as errors of commission. If the record had been certified to the court of chancery, the ground that the cause was undecided could not have been taken; for then there would have been two conflicting decrees of this court certified to the court of chancery.
It is said, that this rule for rehearing the cause so long as the record is not certified to the inferiour court, would operate unequally to suitors, because the clerk may send out the record in some cases, and neglect to do so in others; that his neglect would leave it in the power of the court to correct its errors in the one set of cases, while in the other, his diligence would take away from the court the power of correction. Still, it must be admitted, that the effect of such a rule would be to do more justice, than a rigid adherence to the opposite rule, that after the end of the term, no error, however great and palpable, can be corrected. But there is nothing in the objection. The law prescribes the duties of the clerk, and he takes an oath to perform them. He cannot send out all the records uno fiatu; some must be postponed to others; and the manner in which he performs his duty cannot affect the power of the court over its orders and records so long as they in fact remain in court.
The case of Campbell v. Patterson has been mentioned. I did not sit in that case : if I had been present, I might have been against the rehearing. If the record had *292 been sent out in that case, the case goes further in support of motions to rehear after the term, than any other case decided by the court. The case of The Bank of Virginia v. Craig is not in point; for there the record had been sent out, and the court had no process by which it could recall it; so that if the cause had been reheard, a different decree from the one which had been entered, might have been sent out, and when certified might have been in conflict with the first decree.
Examples drawn from inferiour courts have no application. Their errors can always be corrected by the superiour court; and they themselves have no power of correction after the term has passed, except in suits in chancery, where a bill of review may be filed. Nor are the examples of the courts of king's bench and common pleas in England, of any force: neither of them is a supreme court, and their errors may be corrected elsewhere.
In every view, I have no doubt of the power of the court to rehear the cause; and I think it might promote justice to rehear it, and to change the decree. But my brother judges incline to the opinion (as I myself do) that under the reservation in the decree of this court, of a right to both parties to except to the commissioner’s report now in the record, and to any other report that may be made in the cause, justice may be done to the appellee. I have the less reluctance, therefore, the court being equally divided, to pronounce that the motion for a rehearing is overruled.

 It seemed to the reporter, from the examination he was obliged to make of the record, that the alleged mistake of this court as to the mailer of fact, though it was by no means obvious, and was easily to be accounted for, was yet quite certain.