———————o———————

## STEVENS *v.* THE BOARD OF COMMISSIONERS OF HARRISON COUNTY.

CORONER.—*Justice of the Peace.*—When the coroner is absent from the county, or unable to attend, a justice of the peace may hold an inquest, and, in doing so, has all the power and can perform all the duties pertaining to the office of coroner.

SAME.—*Post Mortem Examination.*—*Physician.*—When a justice of the peace, acting as coroner, requests a physician to make an examination of the body over which an inquest is being held, and he makes an examination, and the justice so certifies to the county commissioners, the physician will be entitled to an allowance.

From the Harrison Circuit Court.

*A. Stephens,* for appellant.

*W. N. Tracewell* and *F. W. Mathis,* for appellee.

DOWNEY, J.—The appellant filed the following account before the board of commissioners :

" HARRISON COUNTY, IND.,

" To Thomas J. Stevens, M. D.,            Dr.

" For *post mortem* examination on the body of Barney O'Brien, fifty dollars ($50).

" THOMAS J. STEVENS, M. D."

The commissioners allowed ten dollars of the account, and refused to allow the residue. Stevens, M. D., then appealed to the circuit court, where, upon a trial by the court, no part of his claim was allowed. He moved the court for a new trial, which was refused, and judgment for costs rendered against him.

The only error assigned in this court is the refusal of the circuit court to grant a new trial. The reasons for a new trial are, that the evidence was not sufficient to sustain the finding of the court, and that the finding was contrary to law.

The statute provides that when a surgeon or physician is required to attend an inquest held by a coroner, and make a *post mortem* examination, the coroner shall certify such service to the board of county commissioners, who shall order the same paid out of the county treasury. 2 G. & H. 17, sec. 8. The inquest in this case was held by a justice of the peace, and he certified for Stevens that on the 19th day of March, 1872, he was a justice of the peace, and acted as coroner, the regular coroner being at the time twenty miles from him, and not being present; that as such acting coroner he employed Dr. Thomas J. Stevens, of, etc., to make the *post mortem* examination; that said Stevens did make a *post mortem* examination, by his direction, of the dead body of said O'Brien, as was requested by the jury, and was not assisted by any other physician or physicians. Stevens states, in his evidence, that he made the examination; says he was at the place where the dead body was; that the coroner was absent, and Bowman, a justice of the peace, held the inquest; that he went to the place where the body was, prepared to make the examination, had all the necessary instruments except a saw, which he could have got at a farm-house; found several wounds on the head, made apparently with the poll of an ax, several small wounds on the scalp, on the front part of the head, etc.; that the coroner employed him to make a *post mortem* examination. He ran his fingers around the edge of the large wound and probed it, and thinks he removed some of the membranes with a scalpel. He insisted upon opening the skull to learn the extent of the wound and cause of the death—so told the jury. The father of the deceased objected to such an examination, and the jury said it was not necessary. The coroner refused to have it done. His services were worth fifty dollars. He was not summoned

as a witness; was told the squire wanted him to be present, and he went; Bowman told him he had intended to summon him. Bowman told him to make a *post mortem* examination; he did not volunteer to make it; considers he made a *post mortem* examination; made it as thorough as he could with finger and probe, etc.

Bowman testified that at the date named he was a justice of the peace, etc.; in the absence of the coroner, he acted as coroner, and held the inquest; when he got to the place he met Dr. Stevens; before he got there, he intended to send for him; did not send for him, nor request any one to do so; asked the plaintiff to look at the wounds on the head of the deceased; he did so, and made some examination of the wounds by using his finger and a probe; the plaintiff was anxious to make a *post mortem* examination; the father would not allow it; the jury said it was not necessary; it was clear what caused his death; he gave the certificate which was read in evidence; he forbid Stevens going any further than he went.

One of the jurors testified that he did not desire the plaintiff to open the skull, and that he thought the plaintiff was excited, or that something was the matter with him.

A witness testified as a physician that unless some of the cavities were opened, it was not a *post mortem* examination.

This was the substance of the evidence, except such as related to the value of the services rendered, which ranged from fifteen to fifty dollars.

The statute is, that in every case where the coroner shall be absent from the county, or unable to attend, any justice of the peace of the proper county may hold an inquest over a dead body, etc. 2 G. & H. 18, sec. 16. The third section of an act passed in 1853, Acts 1853, p. 26, provides that justices of the peace shall have all the powers, perform all the duties, and be governed in all respects by that and every other act regulating the duties and compensation of coroners in regard to holding inquests. According to this act, the justice of the peace had power to act as coroner whether the

coroner was in the county or not. The evidence shows that the justice requested the doctor to make an examination, and that he did make some kind of a *post mortem* examination. The justice so certified to the county commissioners. We think the doctor was entitled to an allowance of some amount. It is not for us to decide how much.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.