NOVEMBER TERM, 1897—VOL. 19.  ' 643

The Board of Commissioners of Fountain County v. Van Cleave.

## THE BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY v. VAN CLEAVE.

[No. 2,436.   Filed March 31, 1898.]

CORONERS.—*Inquests.*—When a coroner has held an inquest on view of a body, and returned a verdict, and filed same with the clerk of the circuit court as provided by statute, he cannot afterward upon his own motion or upon application of friends of the deceased hold a second inquest, and bind the county for the value of the services of a surgeon who made an examination of the body at such second inquest. *pp. 634-650.*

SPECIAL VERDICT.— *Motion for Judgment.*— *Practice.*— Where a special verdict has been returned it becomes the duty of the court to render judgment in favor of the party entitled thereto without any formal motion. *p. 650.*

From the Montgomery Circuit Court.   *Reversed.*

*A. H. Lindley,* for appellant.

*G. W. Paul* and *H. D. Van Cleave,* for appellee.

ROBINSON, C. J.—This cause was transferred to this court by the Supreme Court.   Appellant appeals from a judgment in appellee's favor for services rendered by appellee at the request of the county coroner.   It appears from the special verdict that on the 7th day of July, 1895, the coroner of Fountain county, Indiana, assisted by a practicing physician, held an inquest over the dead body of Clara E. Shanks, found in that county; that the inquest was held in due form of law and a verdict returned by said coroner as follows: "Now after viewing the body of Clara Elmira Shanks, and hearing and considering the evidence of the witnesses  *  *  *  it is my verdict that said deceased came to her death from drowning, an act of her own volition.   B. F. Young, Coroner of Fountain county," which verdict was filed with the clerk of the Fountain circuit court on the 8th day of July, 1895; that the appellant paid out of the county treasury all the ex-

penses of such inquest; that afterwards, on the 18th day of July, 1895, at the request of friends of the dead woman, the former inquisition not having been vacated, the coroner caused the body to be exhumed, and an autopsy and examination made by appellee, who knew of the first inquest, and certain other physicians and surgeons, and thereupon filed in the clerk's office what he termed a supplemental verdict, which, after reciting certain facts, concludes as follows: "I therefore find that Clara E. Shanks came to her death by a person or persons to me unknown. B. F. Young, Coroner of Fountain county, Indiana." This suit was brought by appellee to recover the value of his services in making such autopsy and examination on the 18th day of July, the claim having been disallowed by the board.

The different questions discussed by counsel may each be determined by a solution of the following question: When a coroner has held an inquest upon view of the body, and has returned a verdict, and filed the same with the clerk of the circuit court as provided by statute, can he upon his own motion, hold a second inquest, and bind the county for the value of the services of a surgeon who makes an examination of the body at the coroner's request? So far as we can learn this question has never been determined in this State. It is not an open question in this State that a coroner, when holding an inquest, may employ a physician or surgeon to make a post mortem examination of the body and that the county is bound to pay the value of such services. The statute makes it the duty of the coroner to certify such services to the board, who shall order the same paid out of the county treasury. The value of the services agreed upon by the coroner and surgeon is not conclusive upon the board, but the amount of the compensation is to be

determined like any other claim against the county. *Jameson* v. *Board, etc.,* 64 Ind. 524; *Board, etc.,* v. *Jameson,* 86 Ind. 154; *Board, etc.,* v. *Bond,* 88 Ind. 102; *Stevens* v. *Board, etc.,* 46 Ind. 541; *Board, etc.,* v. *Gillum,* 92 Ind. 511; *Lang* v. *Board, etc.,* 121 Ind. 133.

The coroner is an ancient officer by the common law, and is of equal antiquity with the sheriff, and was ordained with the sheriff to keep the peace. The name arose from the fact that the coroner dealt principally with the pleas of the crown. The duties of the office of coroner were largely defined in Stat. 4 Edw. 1, (1276), and consisted, among other things, in inquiring concerning sudden deaths, which must be made upon view of the body at the place where the death happened, by a jury of four to six persons. If a person was found guilty the coroner could commit him to prison, and could inquire as to his property which was forfeited, and he was required to certify the whole of the inquisition, with the evidence, to the court of king's bench or to the next assizes. 1 Bl. Comm. 346, 4 Bl. Comm. 274. It was well settled at common law that when the coroner had returned his verdict he had no power to act further upon his own motion. Thus if a coroner wished to take a new inquisition he could not do it without leave of court. 1 Strange 167. And in 1 Styles's Reports, p. 461 (decided in 1655) it is said: "The court was moved for a *melius inquirendum* to be directed to the coroner of Middlesex to enquire of what goods one Tooms that hanged himself did die possessed of, because the inquisition returned did only find the goods he was possessed of in London. Glyn, Chief Justice. You may have a *melius inquirendum*, it being for the Protector, if the practice of the court will allow it, but it must be directed to the sheriff, because the coroner

hath done his office already and hath nothing now to do with it."

At common law, one of the incidents of the office of coroner was to take inquisitions *super visum corporis*. If an inquisition was taken without view of the body he might take a second inquisition *super visum corporis* which was held to be good because the first was absolutely void, and if an inquisition was taken *super visum corporis* and another inquisition was taken upon the same subject, the second was void because the first was well taken. Hawkins' Pleas of the Crown (8th ed.), section 23, p. 80; Hale's Pleas of the Crown (1st Am. ed.), p. 58 *et seq.*

In *Regina* v. *White*, 3 Ellis & Ellis, Q. B., 137, a rule was asked calling on the coroner to show cause why a writ of *certiorari* should not issue to remove into the court of queen's bench all inquisitions taken before him on the body of Emma Stafford. It appeared that under the first inquisition taken on the 17th of May, the jury found that the deceased had "died by the visitation of God," and under the second inquisition, taken on the 21st of May, a verdict of willful murder was returned against White and Fisher who were committed to prison on the coroner's warrant. The last inquisition was quashed, the court holding: "We have the authority of Lord Hale and the uniform course of practice in support of the proposition, that a coroner cannot hold a second inquest while the first is existing. If the coroner were allowed, *mero motu*, to hold two inquests, the greatest inconvenience might arise from the inconsistent findings of the respective juries. In holding an inquest, the coroner performs a judicial duty, and he is *functus officio* as soon as the verdict has been returned. He can hold no second inquest in the same case, unless the first has been quashed by this court; nor can he inquire

any further unless a *melius inquirendum* has been awarded." See Styles's Reports 461; 1 Strange 533; 1 Salkeld 190.

It is provided by the statutes of this State, that every coroner, as soon as he shall be notified that the dead body of any person supposed to have come to his death by violence or casualty is within his county, shall immediately proceed to inquire how and in what manner he came to his death, and all persons desirous of being heard shall be examined as witnesses; and when a physician or surgeon is required to attend such inquest, and make a post mortem examination, the coroner shall certify such service to the board of county commissioners, who shall order the same to be paid; that the testimony shall be in writing, and subscribed by the witnesses, and returned by him to the circuit court; that, having viewed the body, heard the evidence, and made all necessary inquiry, he shall draw up his verdict on the death under consideration in writing, and sign his name to the same, which verdict so found shall be by him filed in the office of the clerk of said county in which said body was found, immediately after his inquest is completed. See sections 7954-7958, Burns' R. S. 1894 (5878-5882, Horner's R. S. 1897).

The above sections of the statute are in affirmance of the common law, and are to be construed as was the common law. See *Baker* v. *Baker*, 13 Cal. 87; *Douglass* v. *Howland*, 24 Wend. 45.

Our statute gives the coroner no power to hold more than one inquest. When he is informed that the dead body of any person supposed to have come to his death by violence or casualty is within his county, it is his duty to immediately proceed to inquire, upon view of the body, the manner of such death; and when he has made such inquiry and has made and signed his ver-

dict, it is his further duty to file such verdict in the office of the clerk of the county, and when that is done the whole proceeding is at an end.

The fact that the second inquest was held at the request of the friends of the deceased person is not material for any purpose, except perhaps to show the good faith of the officer in holding the second inquest, and that is not questioned. If he can hold a second inquest because the friends of the deceased were not satisfied with the first, he could hold a third at the request of the friends of a person who might be charged with the crime in the second inquest.

The sole purpose of a coroner's inquest is to have an immediate investigation into the commission of a supposed crime by some officer especially charged with such duty. The whole proceeding is merely preliminary, and the object is to determine whether it is probable that a crime has been committed by an examination of the facts while they can be most easily had. Whatever may be his conclusion, it can neither convict nor acquit any one of the crime. There is no reason why the requirements of the law cannot be satisfied with one inquest, made upon view of the body, and no question is made but that the first inquest was legally conducted.

The length of time to be taken in the inquest proceedings and the thoroughness of the investigation are matters to be determined by the coroner, and, if he returns a verdict upon an investigation too hastily made, the matter is at an end so far as he is concerned. He has no power to recall a verdict that he has filed with the clerk, and he has no power to set it aside indirectly by holding a second inquest, and filing another verdict. We are not deciding whether there is any method by which such a verdict could be set aside, and another inquest held, as that question is not before us.

We simply hold that when an inquest has been held, as the statute requires, and the verdict filed, the coroner has no power upon his own motion, to hold another inquest, and no power to bind the county for the expenses of such subsequent inquest. As long as the first inquest stands, it is conclusive upon the coroner and all others.

The verdict returned upon the second inquest is termed by the coroner a supplemental verdict, and it is argued by counsel that this supplemental verdict so filed relates back to the time of filing the original verdict, and takes its place as a part of the original verdict. But each verdict was complete in itself, and as the first verdict was to the effect that the deceased had committed suicide, and the second that the deceased had been murdered, we fail to see how the second can be said to supplement the first, even if the statute recognized such supplemental verdict, which it does not do. If the second verdict could stand, it would set aside and entirely supersede the first.

The New York and Indiana statutes relative to the duties of coroners in holding inquests are very similar. The New York statute has been construed in the case of the *People* v. *Budge*, 4 Parker's Crim. Rep. 519. In that case, at an inquest held *super visum corporis* a verdict was returned that the deceased died by her own hand. About four months afterwards another inquest was held, which resulted in a verdict that the deceased was killed by Budge. The coroner then issued his warrant of commitment, and Budge was imprisoned. The prisoner asked an absolute discharge, on the ground that there having been an inquisition, not quashed, vacated, or set aside, the coroner had no power to hold a second inquest. In discharging the prisoner from custody the court said: "That the committal is unauthorized, follows from

the rule, perfectly well settled, that a second inquisition cannot be held until the first has been vacated, and a new inquiry ordered by the court.

"Such is the rule unquestionably in England, as is conceded, and there is nothing to the contrary to be found by any authority in this country. No power is given to the coroner by our statute to hold a second inquisition, but by the strongest implication there is to be but one inquisition, *super visum corporis*, and that is to be held 'forthwith' on his receiving notice of the death, and being completed it is filed, and the whole proceeding is ended. 'As to any original self-moving' power to do anything further in holding an inquest, the coroner is *functus officio*." See Smith's Sheriffs, p. 605 *et seq*.

Appellant moved for judgment in its favor on the special verdict, which was overruled and an exception taken, but this ruling has not been assigned as error. However, under the act of 1895, when a special verdict has been returned, it becomes the duty of the court to render judgment in favor of the party entitled to it, and this without any formal motion on the part of any one. It is the usual practice under that act to file a formal motion, but we do not think such motion was absolutely necessary. *Carthage Turnpike Co.* v. *Overman, ante,* 309. Appellant did except to the rendering of judgment in appellee's favor on the special verdict, and has assigned this ruling as error, which, in any event, we think presents the question.

As the act of the coroner in holding the second inquest was without any authority of law it follows that he had no power to employ a physician, and bind the county for the value of such services. Judgment reversed, with instructions to render judgment in appellant's favor on the special verdict.