148 So.2d 653

Portia W. MARSHBURN

v.

W. H. DICKEY et al. d/b/a Forest Products Company.

1 Div. 908.

Court of Appeals of Alabama.

Jan. 8, 1963.

Inge, McMillan & Inge, Mobile, for appellant.

Scott & Porter, Chatom, for appellees.

CATES, Judge.

Suit for breach of warranty of title on sale of standing timber. Verdict and judgment: for plaintiff with damages at $400.-51. Motion for new trial: overruled. Appeal from both judgments.

May 8, 1954, Dickey and Beech paid Mrs. Marshburn $279.51 by check. On it was the legend *"By Endorsement This Check is Accepted in Full Payment of the Following Account* For 9317 feet Pine Logs from E ½ of NW ¼ of SE ¼ Sec. 13–6–1 West. 'Title Guaranteed.' " (Italicized matter printed, rest in pen and ink.)

Other than the check there was no writing of the transaction.

December 10, 1959, the Supreme Court of Alabama decided an appeal against Mrs.

Marshburn in a suit brought by Arthur Sullivan to quiet title to the land from which Dickey and Beech had cut the timber. The opinion is reported in 270 Ala. 50, 116 So.2d 378.

Arthur Sullivan died intestate November 23, 1957. Supreme Court Record 4910, 1 Div. 773, Order of reviver May 26, 1959. Marshburn v. Sullivan, supra.

Early in 1960 the judgment of the Supreme Court having become final, after notice and demand, Messrs. Dickey and Beech paid Hon. Grady Hurst, as attorney for Sullivan's widow, $506.84. Beforehand, January 22, 1960, they had called on Mrs. Marshburn to reimburse them for the $279.-51 they had paid her. This suit was brought April 6, 1960.

Assuming, without deciding, that a demand on the vendee without suit is sufficient to vouch in the vendor (Johnson v. Oehmig and Wiehl, 95 Ala. 189, 10 So. 430), yet here Dickey and Beech have failed to prove damages. This because their payment, after Arthur Sullivan's death, was voluntary. Sullivan's cause of action, whether real or personal, did not survive him. Code 1940, T. 7, § 150, as amended,[1] and § 151.[2] Wynn, Admr. v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228.[3]

Hence, it was error to overrule the demurrer to the complaint, as amended, and to refuse the affirmative charge (with hypothesis) which appellant requested in writing.

Reversed and remanded.

---

1. § 150, as amended: "All actions and causes of action on contract, express or implied, and all personal actions, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal causes of action survive against the personal representative of a deceased tort feasor."

2. § 151: "Real actions to try the title, or for the recovery of the possession of lands, and actions for injuries to lands survive in favor of heirs, devisees, or personal representatives, and against heirs, devisees, tenants, or personal representatives according to their respective rights; and the court must direct the record and judgment to be so framed as to secure their rights and declare their respective interests."

3. Pp. 493, 494–495, 53 So. p. 238: "* * * We have in Alabama, as we have seen, statutes as to the survival of actions, but none as to the survival of causes of action, unless the homicide statute and the employer's liability act are such statutes. It has been held by this court that our statutes as to the survival, revival, and abatement of actions did not apply to cases in which the defendant or any wrongdoer died before action brought; but only to cases in which actions were brought. Blakeney v. Blakeney, 6 Port. 109, 30 Am.Dec. 574; Nettles v. Barnett, 8 Port. 181. * * *

"In the main, it will be seen that the Legislatures have been resurrectionists, as to both dead causes and actions. The courts have aided them as to the 'actions,' but have retarded them as to 'causes.' As to the one, the statutes are remedial and are liberally construed; as to the other, they are in derogation of common-law rights, and are strictly construed. As to the one, they willingly believe in the resurrection, but as to the other they are usually doubting Thomases, and are more inclined to reinter them, as corpses, than to aid in their resurrection. They require convincing proof as to the survival of the 'cause'—they will accept no ghost stories. * * * *"