# Reid *v.* Moulton.

*Bill in Equity for Injunction in Matter of Contested Election.*

1. *Right to office; how determined, and protected.* — The right to an office, dependent on an election by the people, is to be determined by the number of legal votes received at the election, and not by the certificate of the returning officer, though issued under a *mandamus* from the circuit judge; and the office being a species of property, the person legally entitled to it is also entitled to all the protection given by law to other property.

2. *Jurisdiction of equity, on ground of fraud, in matter of contested election.* — The incumbent of a municipal office, claiming to have been reëlected by the people at the expiration of his term, may, if he has no adequate remedy at law, maintain a bill in equity for an injunction, against the person who has received the certificate of election, and against the returning officer by whom it was issued, who also has in his possession the ballot-boxes, poll-lists, &c., to restrain the use of the certificate, on the ground that it is founded on false and fraudulent returns, corruptly made by some of the managers of the election, although the holder of the certificate is not charged to have participated in the fraud; and having acquired jurisdiction

[Reid v. Moulton.]

on account of the fraud, the court may go on and make all necessary orders for the preservation of the ballots, &c. (BRICKELL, J., dissenting.)

3. *Contest of election to municipal office.* — The general statutes on the subject of contested elections, contained in the Revised Code, are not applicable to elections for municipal offices; and the 12th section of the amended charter of the city of Mobile (Sess. Acts 1865–6, p. 202), while it provides that the election of any municipal officer may be contested before the judge of the circuit or city court, and prescribes how testimony may be taken, fails to prescribe the mode of contest, or to specify any grounds or causes of contest; consequently, there is not a plain and adequate remedy at law for contesting such election. (BRICKELL, J., dissenting, held that the deficiencies of the charter were supplied by the general law, and that a *quo warranto*, or an information in the nature of a *quo warranto*, was an additional adequate remedy.)

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. ADAM C. FELDER.

This is the case in which an application was made to this court, at its last term, for a writ of prohibition, or other appropriate writ, to restrain further proceedings in the cause, and to vacate and set aside the proceedings already had, on the ground that the court had no jurisdiction of the case made by the bill. See the report of the case, *Ex parte Reid*, 50 Ala. 439–45. The bill was filed on the 16th December, 1873, by Cleaveland F. Moulton, then holding the office of mayor of the city of Mobile, against John Reid, Jr., who had received the certificate of election, as mayor-elect, from the sheriff of Mobile county, as returning officer, and also against the said sheriff, Rufus Dane; and sought an injunction against said Reid, to prevent him from exercising the duties of the office of mayor, or interfering with the complainant in the discharge of those duties, until the final decree of the court in the premises; and also against said Dane, as sheriff, to restrain him from destroying, or in any manner interfering with the ballot-boxes, or other evidences of the election, until the final determination of the cause. A full synopsis of the bill was given in the opinion delivered by PETERS, C. J., as follows:—

" The first section, or paragraph, alleges that there was an election held in the city of Mobile for municipal officers, on the 2d December, 1873, under the provisions of the act for the reorganization of the municipal government of the city, approved February 8, 1873. The second section alleges that the complainant, said C. F. Moulton, John Reid, Jr., one of the defendants, and one Lomery, were the only candidates at said election for the office of mayor, and were the only persons voted for as candidates for that office. The bill then proceeds as follows: ' 3. Orator states, that he is now the duly elected, qualified, and acting mayor of the said city of Mobile; and, upon information and belief, states that he was the choice of a large majority of the voters of said city, and in fact received, as he is informed and believes, a plurality of the votes cast at said election for mayor of said city over both the opposing can-

[Reid *v.* Moulton.]

didates, and that he is the mayor-elect of said city, and is legally and justly entitled to retain said office for another term, as provided by said act, and to be qualified as the mayor of said city as in case of mayor-elect. 4. Orator states, on information and belief, that the inspectors of said election, at the polling places of the different wards of the city, made out certain papers, which your orator claims are invalid, and of no force and effect, because not provided for by law, in which are pretended to be declared the results of said election at the several polling places; but that said papers do not declare the true result of said election; that in the fifth ward of the city, the papers, made out as aforesaid by said inspectors, were knowingly, wilfully, and fraudulently so made as to falsify the result of said election at said fifth ward polling place, in this : that the said paper declares that the said John Reid received a plurality of the votes at said polling place, to wit, a plurality of one hundred and seventy-one votes, whereas, in truth and in fact, he received a less number of votes in said ward than your orator, to wit, thirty-nine votes, more or less. 5. Orator states, on information and belief, that said papers, so falsifying the result of said election, were made in pursuance of a conspiracy formed between said inspectors and certain persons who were inimical to the election of your orator, whereby a large number of the votes which had been cast at said fifth ward for your orator, were to be abstracted from the box, and other votes for said Reid, which had not been cast, were to be placed in said box in lieu of the votes so abstracted; and said inspectors were to make the said paper, declaring the result, by counting said ballots, so fraudulently and unlawfully placed in said box. And your orator states, upon information and belief, that the acts and doings of said persons, in furtherance of said conspiracy, were carried into completion; and that a great many votes, which had been polled at said ward for your orator, to wit, one hundred and fifty votes, were taken from the box, and destroyed; and that a like number of ballots for said Reid, which had not been voted, were substituted in lieu thereof. 6. Orator states, upon information and belief, that but for the monstrous frauds perpetrated in said fifth ward, the said papers, so made by said inspectors, would have shown his election by a majority of two hundred and fifty votes; but, by reason of said fraud, the said paper shows the election of said Reid by a majority of twenty-six votes. And orator further states, that the frauds there were perpetrated by men acting in behalf of said Reid, and advocating his election. 7. Orator further states, that it is the duty of Rufus Dane, sheriff of Mobile county, as the supervisor of said election, to open, compare, and count the ballots cast at said election, and, upon

[Reid v. Moulton.]

said counting, to declare the result of said election, and to give certificates of election to the persons elected; that said Rufus Dane has taken the said papers, so made by the said inspectors, and which your orator has shown were false and fraudulent, and has ascertained the result of said election from them, and has thereupon declared the said Reid elected mayor of said city upon false and fraudulent papers, and has given him a certificate of election as mayor.'

" The 8th section of the bill states, that the city election in Mobile may be contested before the judge of the city court of Mobile, or before the judge of the circuit court; but that the city charter does not provide in what manner said contest shall be tried, nor the causes for which said contest may be made; and that it is impossible for the complainant, for the reasons stated, to contest the election of said Reid until the charter is amended. The 9th section states, that the city charter does not provide for a trial by jury of the contest, nor for an appeal from the judgment on the contest, to a court having the power to empanel a jury to try issues of fact; that the provisions of the charter as to a contest are, for these reasons, unconstitutional; 'wherefore, and unless restrained by the order of this honorable court, the said Reid will, on the 1st day of January, 1874, the day appointed by law for the mayor-elect to assume the office of mayor, take the oath of office, and commence to exercise the duties and functions of said office, and to enjoy the emoluments thereof, to all of which he is entitled by virtue of said certificate of election, and your orator will be thus wrongfully deprived of his right to said office, and of his right to contest the said election by any proceeding at law.' The 10th section asks that said Reid may be made a party defendant, and required to plead, answer, or demur; and the 11th contains the prayer for an injunction against him, 'enjoining him from exercising any of the duties or functions of mayor of the city of Mobile, or in any way interfering with your orator's right to perform the duties and functions, and to enjoy the privileges and emoluments thereof, until the further order of this court; and that, upon a final trial, your honor will take jurisdiction of the whole case, and that the same may be heard and determined in this honorable court, and that your orator may be declared duly elected mayor of said city of Mobile, and may be confirmed and continued in his office,' &c.

" The 12th section is in these words: '12. Complainant further alleges and states, that said election was held by and under the supervision of Rufus Dane, sheriff of the county of Mobile, under the provisions of the act of the legislature approved February 8, 1870; that it was the duty of the said sheriff, under the provisions of the said law, to declare said

[Reid *v.* Moulton.]

election, and to issue certificates of election to those elected ; that it was his duty to have issued a certificate of election to your orator, who was fairly and legally elected to said office of mayor of said city ; that said Rufus Dane, sheriff as aforesaid, has failed and refused to issue a certificate of election to your orator. And your orator further states, that the ballot-boxes, ballots, poll-lists, and returns of said election, and all the evidences of said election, are now in the possession of the said Rufus Dane ; that said Dane threatens to turn over to the city clerk the said boxes, ballots, poll-lists, and returns of said election, to be by that officer destroyed, as provided by the charter of the said city. Complainant further states, that the destruction of said ballots, poll-lists, and returns, would be wholly destructive of the rights of your orator; that it would be the destruction of all the material evidence in this cause, or the most valuable and material evidence in the cause; that it is of the highest importance to the success and interest of your orator that said ballots, boxes, poll-lists, and returns should be carefully preserved, and produced under the orders and decrees of this honorable court, as evidence in this cause ; that there should be a careful and thorough count of said ballots, and the same compared with the poll-lists thereof, under such orders, judgment, and decrees as this honorable court may think proper to make in the premises.' The 13th paragraph asks that said Dane may be made a defendant, and required to plead, answer, or demur ; the 14th prays for an injunction against him to preserve the ballot-boxes, &c., and to produce them under the order of the court; and the 15th contains the general prayer, for other and further relief."

The bill was duly sworn to. An injunction was ordered by the chancellor, on the complainant entering into bond, with sureties, in the sum of one thousand dollars, conditioned to pay " all such damages as any person may sustain by the issuing of the injunction as prayed." The bond was given, and the injunction issued on the 17th December, 1873. An answer on oath by the defendants was waived, but each of them put in a sworn answer. Dane denied all knowledge of the alleged frauds in the election returns, and stated, that he was proceeding to count the votes returned to him, as he understood his duty to require, when he was commanded by a writ of *mandamus*, issued from the circuit court of Mobile, to issue a certificate of election to said John Reid, who appeared from the returns of the inspectors to have received a plurality of the votes cast for mayor ; that he issued the certificate as required by the order, and he pleaded this judgment as a defence of his action in the premises.

The material portions of Reid's answer are contained in the

[Reid *v.* Moulton.]

following paragraphs : " Respondent denies that complainant was the choice of a large majority of the voters of said city for the office of mayor at said election, and that he is now the mayor-elect, or entitled to retain said office after the expiration of his present term. He makes these denials on information, which he believes to be correct; and he asserts, on information and belief, that he, this respondent, is the duly elected mayor of said city of Mobile, and is entitled to the same. Respondent admits that the inspectors of said election did make returns thereof; but that said returns are invalid, and of no force and effect, and are false and untrue, he denies ; and he asserts, on information and belief, that said returns are true and correct, and declare the true result of said election, and are, as he is advised, valid in law. Respondent, on information and belief, states the fact to be, that he received a majority of the legal votes cast at said election for mayor in said fifth ward, and that the returns made from said ward are correct, and were not made to falsify the result of the election. Respondent denies, upon information and belief, that said returns were made on any conspiracy between said inspectors and friends of this respondent ; and shows, on information and belief, that two of the three said inspectors were not of the political party which favored the election of said respondent, and were not of his party at all. He denies that he has, or had, any knowledge of any conspiracy for the purposes alleged, and he does not believe that any such conspiracy was ever made, or ever existed. From information and belief, he denies that any votes which had been cast for the plaintiff were taken from the box, or that any were destroyed, or that any votes were substituted. Respondent denies, upon information and belief, that said Moulton was elected mayor, and denies that any correct statement of the votes cast would show him entitled to the office of mayor ; and states, upon information and belief, that any returns which would show that result would be false, and could be made only by a fraud upon the rights of this respondent and the electors of the city. Respondent denies, on information and belief, all the allegations of fraud contained in the 6th paragraph of the bill, and positively denies all participation in or knowledge of any fraud by any friends of this respondent. Respondent denies the allegations of the 7th paragraph, as to the duty of the sheriff ; and, for answer thereto, shows that he holds the certificate of the sheriff that he is entitled to the office of mayor, and was duly elected to that office at the said election, by order of the circuit court of Mobile, by decree rendered on the 8th day of December, 1873, which is the only court having jurisdiction of the controversy, and the same is conclusive, unless vacated, or set aside, by a

[Reid *v.* Moulton.]

court of superior or appellate jurisdiction; a copy of which said certificate is hereto appended as a part of this answer. The charter of Mobile provides, as this respondent is advised, for a contest of said office; and said plaintiff should assert his rights before the tribunal provided by law; and respondent insists, that this court has no power to provide another tribunal, nor to legislate, and remove defects, if any exist (which is not admitted), in the laws of the State. This respondent is advised, and so shows, that a plain and adequate remedy at law exists, for any wrong which said complainant may be able to establish; but, until such proceeding be had before such proper tribunal, this respondent is entitled to the said office, to which, by the decree of a competent court, he has a legal title and good right; and he has already been duly sworn, by the judge of said court, as such mayor of Mobile, as by law required. He denies that this court has any jurisdiction over this controversy;" and he demurred to the bill for want of equity, and because the complainant had an adequate remedy at law.

On the coming in of the answers, the defendants made a motion to dissolve the injunction, both for want of equity in the bill, and on the denials contained in the answers. The chancellor overruled the motion, and his decretal order to that effect, from which this appeal is taken, is now assigned as error.

R. H. SMITH and P. HAMILTON, for appellant.— 1. The chancery court has no jurisdiction over contested elections. No trace of any such jurisdiction can be found in the text-books, and this is conclusive against its existence. 2 Kent's Comm. 314; *Attorney General* v. *Earl of Clarendon,* 17 Vesey, 491; *Cochran* v. *McCleary,* 22 Iowa, 75; *Hulseman* v. *Reves,* 41 Penn. St. 396; *Markle* v. *Wright,* 13 Indiana, 548; *Hagner* v. *Heyberger,* 7 Watts & Serg. 104. The attempt of the chancery court in England, in 1604, to judge of the returns and qualifications of members of parliament, gave rise to a contest, which established as a cardinal principle of the British constitution, that the chancery court had no such power, and that the parliament itself is the sole judge of the election and qualifications of its members. Hume's History of England, chap. LXV.; Hallam's Constitutional History, 273. Hence is derived the provision contained in the 6th section of the 4th article of the constitution of Alabama. The principle is, that chancery has no jurisdiction over elections, and that, in the absence of statutes expressly conferring power on some other tribunal, the sole judge is the political body to which the party is elected. This principle is applicable to municipal corporations, which are established by law to share in the civil gov-

[Reid *v.* Moulton.]

ernment of the country; which are public political bodies, clothed with executive, legislative, and judicial functions, and intrusted with civil and criminal jurisdiction; which are peculiarly incident to American freedom, and have appropriately been called " the strength of free nations." De Tocqueville on Democracy in America, ch. 5; Dillon on Municipal Corporations, pp. 17, 18, § 9, note 3; Ib. 28, 30, §§ 9, 10.

2. The machinery of the chancery court is not only unsuited to such an investigation, but is such as to disqualify it for the task. Its stated and brief terms, which are, in some counties, but three days in a year, and its cumbrous, slow, and expensive proceedings, would work an absolute denial of justice in most cases, since the term of office would expire before a result could be obtained. Such an investigation, in this case, would open a contest as to the legality of each one of the eight thousand votes cast at the election, on proofs taken by deposition; and this case is but one out of a great number growing out of the same municipal election. The chancellor has issued his injunction, not only against the appellant in this case, holding his certificate as mayor-elect, but also against twenty-one out of the twenty-four aldermen, and against four out of the eight members of the common council, and against the city treasurer, and against the tax-collector, all holding certificates of election to their respective offices. He has, in fact, set aside the municipal election altogether, and suspended the whole municipal action of the city. It is highly probable that these contests will not be terminated, until after the terms of office have all expired. Suppose the complainants should, at the end of this long litigation, be found to have no right or title in fact; in what a light would the administration of justice be placed. The *fiat* of the chancellor, on an *ex parte* showing, would have nullified the election — would have kept a usurper in office, against right, deprived the person rightfully elected of the emoluments of his office, and the people of their undoubted right to choose their own municipal rulers. And if he may thus act in this case, he may assume like jurisdiction of every incorporated city and town in the State, and clog the business of his court with all the political contests of the country. A jurisdiction assumed by any court, which could legitimately end in such a result, must be shown to rest on sound principles, and be established by plain and indisputable legislation.

3. Wherever provision is made by statute for the contest of an election, the power is vested in some common-law judge, or in some other designated officer, before whom the contest may be continuously pursued, without the restraint of stated terms of court, and speedily decided. No other machinery can meet the exigencies of such cases. If no appeal is given by the stat-

[Reid v. Moulton.]

ute, the decision of the officer is final and conclusive ; and if no provision for a contest, in case of an election to a statutory office, is made by the statute, the decision of the matter is committed absolutely to the people and the returning officers. *Louisiana* v. *Judge of Second Judicial Circuit*, 13 La. Ann. 89 ; *Commonwealth* v. *Leach*, 44 Penn. St. 332 ; 9 Kansas, 569. Suppose there were fraud, or error, in the constitution of the college of electors for president and vice-president of the United States ; and that, because of this fraud or error, the result of the election should be declared to be different from what it was in fact ; could any court interfere, and prevent the officers holding certificates of election from acting ?

4. The rule universally recognized is, that the person holding the certificate of election is entitled to the possession of the office ; that the certificate must prevail, until it is set aside by the determination of the contest in a legal mode. *Hulseman* v. *Reves*, 41 Penn. St. 396 ; *Cochran* v. *McCleary*, 22 Iowa, 65 ; 5 Hill, 621 ; 1 Dutcher, 344 ; 20 Wendell, 12 ; 17 Wendell, 81 ; 15 Michigan, 56 ; 35 Penn. St. 263 ; 43 Ib. 372 ; 47 Ib. 292 ; Dillon on Municipal Corporations, § 716 ; Brightly's Election Cases, 319, note.

5. The only cases in which courts of equity have interfered, involving the right to office where there is a contest, have been in favor of parties who held the certificate of election, or other legal evidence of right, against intrusion by claimants without such evidence. 47 Penn. 292 ; 41 Ib. 396 ; 7 Hill, 259 ; 9 Paige, 507 ; 13 Indiana, 548. This principle has been recognized by this court, in the case of the contested right to the sheriffalty of Montgomery county. *Ex parte Scott*, 47 Ala. 609. But Moulton cannot invoke the benefit of this principle, as being the party in possession. His former term of office has expired ; the right which he asserts in his bill, rests solely upon his alleged election in December, 1873 ; and he asks the court to interfere against the party who has the certificate of election, and allow him to show that it is founded upon fraud.

6. The jurisdiction of the court cannot be maintained on the allegations of fraud. In most of the cases above cited in paragraph 4, there were similar charges of fraud ; yet the jurisdiction was repudiated. It is true that frauds may be, and doubtless are, practised at elections ; and it is equally true that public order requires the exposure of such frauds, and the installation in office of the party really elected. But this requires time, and the action of an investigating tribunal ; and public necessity requires that, during the contest, the duties of the office shall be performed without interruption, in order that the public interests may not suffer. The law casts this duty on him who holds the certificate of election, until the

[Reid v. Moulton.]

superior right of some other person is ascertained by the final judgment of a competent tribunal.

7. The jurisdiction of chancery has, thus far, been controverted on the concession, for the sake of the argument, that there was no other remedy; and the bill seems to invoke the jurisdiction on that ground. But the complainant has an adequate remedy by *quo warranto*. Rev. Code, § 3082; 47 Penn. 103; Dillon on M. C. § 680. Having this common-law remedy within his reach, equity has no jurisdiction. High on Injunctions, §§ 798–9; Dillon on M. C. §§ 210, 213; 17 Ohio, 271; 13 Indiana, 548; 9 Ib. 475: 41 Penn. 396, 401; 47 Ib. 292; 56 Ib. 359; 7 Watts & Serg. 104; 48 Illinois, 263, 485; 47 Ib. 482.

8. A distinct tribunal for a contest in relation to the office of mayor of Mobile has been provided by statute. The city charter provides, that such contest shall be tried before the judge of the circuit court, or the judge of the city court of Mobile. Session Acts 1865–6, p. 202, § 12. Jurisdiction of the contest being given to that tribunal, all others are excluded. 28 Penn. 9; 17 Ohio, 271; 1 Coldw. (Tenn.) 59; 44 Penn. 332. This section of the charter has never been repealed, though other sections have been repealed by specific designation. It may be suggested that, because some of the repeals took away from the people the right of election, and gave the appointment to the governor, the mode of contest was also repealed by implication, as being no longer necessary. But the answer to this suggestion is, that these repealing acts were on their face temporary, and each one provided for future elections; and such suspension of an election could not operate a repeal of the mode of contestation. There was room left in such suspending statute for the contestation of future elections, when the right to elect should be restored as contemplated. Potter's Dwarris, 157; 17 Wallace, 431; 3 How. U. S. 644.

9. If the statute fails to prescribe any mode of proceeding, it does not follow that, for this reason, the chancery court has jurisdiction. That court has no power to prescribe rules of practice for other courts. Each court must prescribe its own rules, when not otherwise declared by statute. The tribunal on which the jurisdiction is conferred, must necessarily have authority to direct how it shall be exercised. 1 Heiskell, 456. Nor is the statute defective, in failing to specify the grounds of contest; since the election is required to be conducted according to the laws governing elections in this State, which specify the grounds on which an election may be contested. Session Acts 1870, p. 453, § 13; Ib. 1872–3, p. 30, § 57.

10. The failure of the statute to provide for a trial by jury is no objection to its validity. The 13th section of the Bill of

VOL. LI.

[Reid v. Moulton.]

Rights, securing the right of trial by jury, does not apply to such a case; for the right is created by statute, and it was not in existence when that provision was adopted. *Tims* v. *The State*, 26 Ala. 165; 17 Ala. 510; 43 N. Y. 52; 18 Ib. 210. If the objection were .tenable, it would afford no ground for the interference of a court of equity; one of whose peculiar and distinctive features is, that it proceeds without a jury.

11. No jurisdiction in chancery can be based on the necessity of preserving the ballots. If the contest is made as provided by law, the statute preserves them; and if no contest is made, the law requires them to be destroyed. These provisions are as binding on the chancery court, as on any court of law. But, even if the chancellor had this power, he could not retain the cause for any other purpose: his power would be exhausted by providing for their preservation for the use of the proper legal tribunal. When the chancery court has jurisdiction of the main cause, it may exercise jurisdiction over incidental subjects; but, where the main cause is beyond its reach, as here, it only acts in aid of other tribunals; as by protecting property during litigation, or perpetuating evidence, or granting a discovery. 1 Story's Equity, §§ 72, 456.

12. The statute defining the jurisdiction of the chancery court, and declaring that it extends "to all civil causes in which a plain and adequate remedy is not provided in other judicial tribunals" (Rev. Code, § 698), cannot aid the equity of the bill. That statute does not create or confer any new jurisdiction, but merely defines an existing one. *Waldron, Isley & Co.* v. *Simmons*, 28 Ala. 629.

13. All the allegations of the bill, on which its equity is made to rest, are fully met and denied by the answer. The charges of fraud are made on information and belief, and are denied in like manner; and this is necessarily so, since the ballots, &c., are under seal, and inaccessible to either. In addition to these denials, the respondent exhibits his certificate of election from the sheriff, which is the legal evidence of his right, and proves itself. The injunction should have been dissolved, and the bill dismissed, on the answer. 10 Ala. 485, 595; 1 Brickell's Digest, 677.

MAYER & TURNER, with whom was E. S. DARGAN, *contra.* — 1. The charter of Mobile, in so far as it provides for a contest of the election of municipal officers, is unconstitutional and void, because it does not provide for a trial by jury. An office is property, of which a person cannot be deprived, except in the manner pointed out in the constitution. *Wammack* v. *Holloway*, 2 Ala. 31; *Ex parte Scott*, 47 Ala. 609; Sedgwick on Stat. and Const. Law, 545. The fact that the office of mayor

of Mobile did not exist, and was unknown to the common law, does not exclude it from the protection of the constitution. It is as much a species of property as a steamboat, or a railroad, which were equally unknown to the common law. This court has indeed decided that new offences, unknown to the common law, and established since the adoption of the constitution, may be tried without a jury. 17 Ala. 510; 26 Ala. 165. But it has never declared, and, we apprehend, never will declare, that the legislature may take away from any kind of property the safeguard of a trial by jury, on the ground that the property is of a species unknown to the common law. Property is within the protection of the constitution and laws, no matter what its species, or how modern its origin or recognition. The legislature may indeed abolish the office, whenever it sees fit to repeal the city charter; but, while the office exists, the legislature cannot interfere with it, except in a constitutional manner. On the principle of eminent domain, the legislature may divest a person of his right and title to real estate; but it can only do this " by due course of law."

2. Whether or not the charter is unconstitutional, it is certainly inadequate to the purpose for which it was framed. It not only does not provide for the manner in which contests shall be tried, nor by what rules it shall be governed, nor for what causes it shall be made; but, by subsequent legislation, the mode of contest therein provided is rendered wholly inoperative, because the evidence upon which it is to be made, and on which the decision of the judge is to be rendered, cannot be obtained or preserved. Under the city charter approved February 2, 1866, which contains the provisions for contesting elections, the 13th section required the city clerk to preserve the ballots, with the other evidences of the election, in the event of contest, that they might be examined by the judge before whom the contest was made, as provided by the 16th section; but this 13th section is expressly repealed by the act of 1870, which requires the ballots to be returned to the sheriff, who, for aught in the act, may immediately destroy them. A contest before a judge without evidence, or without the power to compel its preservation, would be futile.

3. A *quo warranto*, or an information in the nature of that writ, would not afford adequate and complete relief. To constitute such a legal remedy as will prevent the jurisdiction of equity from attaching, " it must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in the future." Story's Equity, vol. 1, § 89. Tested by this rule, a *quo warranto*, or information, would not be a complete remedy. To avail himself of that remedy, the complainant would be compelled to go out of office, and then

[Reid v. Moulton.]

file his information to get in again; would be compelled to give up a valuable office, of which he is the lawful incumbent, and wait the law's delay to regain it. Nor would a civil suit for the fees and emoluments during the usurpation be an adequate remedy, within the meaning of the authorities. *Marbury* v. *Madison*, 1 Cranch, 164; 36 Ala. 371.

4. There being no adequate legal remedy, the jurisdiction of the chancery court is undoubted. Rev. Code, § 698.

5. The allegations of fraud would support the equity of the bill, if it could not be maintained on any other ground. No case has ever yet attempted to limit the jurisdiction of equity on this ground. Although Reid was not in fact a party to the fraud, yet, in legal contemplation, it is against equity and good conscience that he should claim any advantage from the iniquity of others. *Atwood* v. *Wright*, 29 Ala. 346; *Huguenin* v. *Bailey*, 2 White & Tudor's L. C. Eq. pt. 2, top page 64; *Bower* v. *Johnson*, 10 Sm. & Mar. 159; 7 Ired. Eq. 71.

6. A court of equity has jurisdiction, by injunction, to secure the enjoyment of a franchise or privilege, whether conferred by constitutional or statutory provisions, or to prevent irreparable mischief to the right; and the bill is maintainable on this ground. 2 Story's Equity, §§ 927–30; *Bonaparte* v. *Camden & Amboy Railroad Co.* 1 Baldw. C. C. 231; *Osborne* v. *U. S. Bank*, 9 Wheaton, 738; *Kerr* v. *Trego*, 47 Penn. St. 361; 54 Penn. St. 361; 10 Florida, 145; *Croton Turnpike* v. *Rider*, 1 John. Ch. 611; *Wammack* v. *Holloway*, 2 Ala. 31; *Mayor of Columbus* v. *Rodgers*, 10 Ala. 371; *Bruner* v. *Bryan*, at the last term.

7. One purpose of the bill is to preserve the ballots and poll-lists, as the only and primary evidence in case of a contest. A court of law could not do this; and this feature of the case, of itself, gives the chancery court jurisdiction. 2 Story's Equity, §§ 1506–12. Jurisdiction having attached for one purpose, the cause will be retained for all. *Stow* v. *Bozeman*, 29 Ala. 397; *Scruggs* v. *Driver*, 31 Ala. 274; *Stewart* v. *Stewart*, 31 Ala. 207.

8. The answer does not deny all the material allegations of the bill, and there is still equity undenied. The answer admits that the sheriff gave certificates of election without having counted the votes, and that the respondent intended to assume the office on that certificate. That it was the duty of the sheriff to count the votes, before declaring the result and giving certificates, see Session Acts 1869–70, p. 453, § 13; Ib. 1873, p. 27, §§ 46, 47. It is shown that Reid protested against the counting of the votes by the sheriff, and prevented him from doing so by a *mandamus* from the circuit judge. Upon the question of fraud this fact is significant. If there was no

fraud, counting the votes would do no harm ; if there was fraud, it was important that they should be counted.

9. Where the dissolution of the injunction might work irreparable mischief, the chancellor has a discretionary power to retain it, notwithstanding the denials of the answer ; and the exercise of this discretion will not be interfered with, except for very strong reasons. *Bibb* v. *Shackelford*, 38 Ala. 611 ; *Buchanan* v. *Ford*, 29 Ga. 490 ; *Rembert* v. *Brown*, 17 Ala. 667 ; *Miller* v. *Bates*, 35 Ala. 580. The denials of the answer are only on information and belief, and are therefore insufficient to dissolve the injunction. *Rodgers* v. *Rodgers*, 1 Paige, 426. See, also, High on Injunctions, §§ 899–903 ; *Roberts* v. *Anderson*, 2 John. Ch. 204.

PETERS, C. J. — This is an appeal from the decree of the chancellor in the court below, refusing to dissolve the injunctions granted in the cause by himself, on the grounds, chiefly, of a want of equity, and also on the answers. The questions of chief consequence in the case seem to be two. They are : 1st, What is the wrong, which the complainant seeks to have redressed ? 2d, Can a court of chancery afford any redress appropriate to the prayer of the bill ? If these questions are answered in the negative, then there is an end of the case, and the bill must be dismissed. But, if they are answered in the affirmative, it becomes the duty of the court to grant the relief appropriate to the case made by the statement of facts on which the suit is founded, if there is not a plain and adequate remedy provided in some other judicial tribunal of the State. Rev. Code, § 698, cl. 1. If these main questions are kept in view, it seems to me that the most pressing difficulties of this cause will soon vanish. If there is a right, and it is injured, or imperilled, it would be the opprobrium of the law, that there should be no remedy to redress the injury, or protect the right. It is a maxim of our system, that such an anomaly cannot occur. If, then, there is a remedy, it must be enforced in the court to which jurisdiction has been given to consider it and pass judgment upon it.

To ascertain whether there is a case, which shows a right in the complainant to be protected, or a wrong to be redressed, it is necessary to look to the facts on which the suit is founded, as the same are stated in the bill. The stating part of the bill is divided into sections, which are numbered, as required by the 34th rule of chancery practice. Rev. Code, p. 824. I state the substance or the words of each of these sections in their order. [See statement of facts, *supra*.]

Wherever there is a conflict of right, it becomes necessary to look to the title on both sides to determine it. Here, the con-

flict is about an office. An office is the subject of property, and, as long as it remains, it is entitled to the protection of the courts, just as other property would be, and to the same extent, and by the same means. In this State, this has long since been the settled law. It is said by Justice GOLDTHWAITE, in *Wammack* v. *Holloway* (2 Ala. 31) : " We need not cite authorities to prove that, at common law, no one can be deprived of the right to exercise or hold a civil office, but by the judgment of his peers, as we have already shown that an office is a species of property." And in the same opinion it is further said : "An office is as much a species of property, as anything which is capable of being held, or owned; and to deprive one of, or unjustly withhold it, is an injury, which the law can redress in a manner as ample as it can any other wrong." 2 Ala. 33, 34, *supra.*

I make these quotations to show, that an office is property, and, as such, is entitled to all the protection that the law can give to property. It is no answer to this to say, that an office which is given by law, may be taken away by the law ; or, if it is given under a condition, that may defeat it, it is held under this condition. This was, in effect, so decided in the case of *Perkins* v. *Corbin*, 45 Ala. 103. But, here, the office has not been destroyed. It still exists. Then, turning to the title to it, as set out in the bill, whose claim is to be preferred and protected ? Moulton shows, most clearly, that he was elected and chosen by a plurality or majority of the votes of the people of the city having a right to vote, as the mayor of Mobile. Under the law at the date of this election, the right to the office could not be conferred in any other manner than by a vote of the people. This has been so often declared by this court, and so constantly adhered to, that it needs no elaboration to make it plain to the commonest apprehension. *Screws, ex parte*, at January term, 1873 ; 2 Ala. 31, 33 ; *State ex rel. Thompson* v. *Circuit Judge of Mobile*, 9 Ala. 338 ; *Ex parte Reid*, at January term, 1874.

This title, thus asserted, to the office, which grows out of, and stands upon an election by a majority of votes, is attempted to be answered by the sheriff's certificate of election held by Reid. But the bill shows that this certificate was procured by an unlawful conspiracy, and is fraudulent and void. So the title to the office stands, as shown in the bill, on the part of the complainant, upon an election by the people ; and on the part of Reid, upon a fraudulent certificate of the sheriff, procured by an illegal conspiracy. If this statement is true, and the demurrer admits it, has the chancellor no jurisdiction of the fraud ? no power to control the use of the false certificate procured by an illegal conspiracy, so as to prevent injury to the

[Reid v. Moulton.]

mayor-elect, who has the only legal title to the office, — viz., election by a majority of the legal voters? As soon as it is admitted that the certificate of the sheriff is fraudulent, it is also admitted that it is void and worthless as a title; and if it is fraudulent and void, it cannot be the foundation of any legal claim to the office.

It may be supposed that this is an anomaly in rights growing out of an election. But this is not so. Fraud is infinite. It is ever running into new channels to perpetrate new wrongs. Here, it seeks to defeat the people, and the man of their choice, in his election to an important office, conferred upon him by their votes. The votes of the people make the office and its emoluments the property of the complainant, and the chancellor has the power to protect these against the invasion of a fraud. But it may be asked, how is the election to be known? The law answers, by a majority of legal votes cast for the person claiming the office, and not by a fraudulent certificate of the sheriff. 9 Ala. 338, *supra.* It is the fraud which gives the court jurisdiction. And after jurisdiction has once rightfully attached, the court may preserve the ballots and poll-lists, as evidence of the complainant's right, and also as proof of the falsity and fraud of the sheriff's certificate.

But it is contended, that, even if the certificate of the sheriff is fraudulent, yet there is no jurisdiction in equity, because there is a plain and adequate remedy provided in other judicial tribunals of the State; that is, by a contest of the election at law. There is no general law for the contest of all elections in this State. These laws are all special. Rev. Code, §§ 318 *et seq.* to the end of chapter, "Of Contesting Elections," p. 145. It will be seen that this chapter of the Code only provides for the contest of such elections as are named therein, and among these the officers of a city corporation are not mentioned. This seems to have been intended to be supplied by section 12 of the "Act to incorporate the city of Mobile," approved February 2, 1866. Acts of Ala. 1865–1866, pp. 202 *et seq.* This section is thus expressed: " That if any municipal election shall be contested in the city of Mobile, it shall be before the judge of the circuit court of Mobile district, or judge of the city court of Mobile. Testimony may be taken by a justice of the peace, or before a commissioner appointed by the judge trying the cause, for the purpose, or may cause the witnesses to come before him and depose in the case." Ib. p. 208, § 12. This clearly refers to some general law, which did not, and does not exist. It does not provide any mode of contest, or any causes of contest. In the absence of legislative authority, these cannot be provided by the courts. Then, the remedy thus intended to be provided is neither plain nor adequate. It can-

[Reid v. Moulton.]

not, then, displace the jurisdiction of chancery, which extends " To all civil causes, in which a plain and adequate remedy is not provided in the other judicial tribunals." Rev. Code, § 698, cl. 1. The redress of the grievance complained of in this bill, is certainly a civil cause, and the jurisdiction to hear and determine it is expressly given by the statute above quoted. Its language comprehends *all civil causes*, in which a plain and adequate remedy is not provided in the other judicial tribunals. Just such is the case here. This section of the Code is a remedial statute, and it should be liberally construed. *Blakeney* v. *Blakeney*, 6 Port. 109; *Sprowl* v. *Lawrence*, 33 Ala. 674.

It may also be said, that Reid was not a party to the conspiracy and fraud by which the alleged fraudulent certificate was procured. This is not sufficient, in such a case as this, to protect him. If he claims under it, he sanctions the fraud, and makes himself a party to it. He cannot be heard to set up a fraudulent claim, to defeat a better claim founded in right, upon an election by the people. For these reasons, which might be greatly extended, I cannot regard the bill in this case as wanting in equity. See the reasoning of the opinions in *Ex parte Scott*, 47 Ala. 609; and *Bruner* v. *Bryan*, at January term, 1874.

The granting of an injunction is, more or less, a matter of reviewable discretion. So is its dissolution. *Bibb* v. *Shackelford*, 38 Ala. 611; *Brooks* v. *Diaz*, 35 Ala. 599; *Boyd* v. *Anderson*, 2 Johns. Ch. 202, and cases cited in the opinions above quoted; Rev. Code, §§ 3426, 3439. In view of these decisions, and the peculiar character of this case, I feel unwilling to declare that the learned chancellor in the court below abused his discretion in refusing to dissolve the injunctions in this proceeding.

The judgment of the court below, refusing to dissolve the injunctions, or either of them, is affirmed, with costs.

B. F. SAFFOLD, J. — I concur with the chief justice, and submit the following as a further expression of my opinion.

The gist of the principle which governs this case is: Does the public interest require that, in all cases, the holder of the certificate of election shall take the office until his right thereto is determined adversely? Between individual claimants, the office is property, or partakes so much of its nature, that no doubt can be entertained of the jurisdiction of chancery when any of the grounds of its jurisdiction arises. The certificate of election cannot be any more than the written declaration of the officer, whose duty is to make it, that the person to whom it is given has received the highest number of votes. Can no accident, mistake, or fraud ever occur in the making or

[Reid v. Moulton.]

issuing of this declaration ? Such presumption is dispelled by the facts of this case. The circuit judge, by *mandamus*, compelled the sheriff to make the certificate in favor of one to whom he might not have issued it, and certainly should not have done so, if he had counted the ballots, as he proposed to do, and found them to be as alleged in this bill.

As the certificate is nothing more than the evidence of the election, the election, and not the evidence of it, confers the right to the office. If this certificate, or evidence, is wholly false, it is plain that the holder of it may take the office against the one who is really entitled to do so. Is this promotive of the public interest ?

It is said, that the delays of the chancery court would permit a pretender of elastic conscience to usurp an office, without shadow of right, by a bill of injunction. To do so, he would have to commit perjury, and to give a bond sufficient to answer for all advantage he might gain. Such a man would find it cheaper and safer to obtain a fraudulent certificate. But the court of chancery is not a delay court. In ten days, the injunction may be determined. If, however, six months, or even the whole term of the office be required, it merely decides who shall hold the office while the right to it is being adjudicated in the court of law, and who shall institute that proceeding. Is this subversive of the public interest ?

The court of law is equally slow in its progress ; and, during the delay, the fraudulent certificate is prevailing, without oath, or bond of indemnity. A fraudulent injunction is more hazardous, and more difficult to obtain, and to keep, than a fraudulent certificate. The court of chancery is a high and honorable court ; equal in dignity to the circuit court. Its examinations are searching and convincing, giving as much satisfaction to the people as those of any other court. It does not try the right to the office, nor even conclusively decide upon the fraud. These issues are determinable finally only in the court of law.

In the present case, it is not Moulton without a certificate who is put in office by the chancery court. It is Moulton retained in office, under a former election, until his successor is elected and qualified. The chancery court is representing the people, by restraining the operation of a false evidence of title to office, and preserving to them an officer duly elected, and, by lawful tenure, awaiting the ascertainment of his successor.

BRICKELL, J., dissented, and referred, for the grounds of his dissent, to the dissenting opinion which he delivered, at the last term, on the application by Reid for a writ of prohibition.

[Reid *v.* Moulton.]

This opinion was lost when that case was reported, and the reporter was not then able to obtain a copy of it for publication. He has since then procured a copy, and herewith publishes it.

BRICKELL, J. (dissenting.) — The constitution of 1819 conferred on this court, as the present constitution confers, the " power to issue writs of injunction, *mandamus, quo warranto, habeas corpus,* and such other remedial and original writs as. may be necessary to give it a general superintendence and control of inferior jurisdictions." In the exercise of this power, it was determined in *Ex parte Morgan Smith* (23 Ala. 94), that the common-law writ of prohibition was a remedial writ, which this court could rightfully issue, and that the chancery court was, within the spirit and meaning of the constitution, an " inferior jurisdiction," to which such writ could be directed.

A prohibition is defined as a writ issued by a superior court, directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution of the same, upon a suggestion that the cause originally, or some collateral matter arising in it, does not belong to that jurisdiction, but to the cognizance of some other court. 2 Bouv. Law Dic. 391. The injury the writ proposes to correct is the exercise or encroachment of jurisdiction, or calling one *coram non judice* to answer in a court that has no legal cognizance of the cause. 3 Cooley's Blackstone, 111. Or, as it is elsewhere expressed, " The object of prohibition, in general, is the preservation of the king's crown and court, and the ease and quiet of the subject." For it is the wisdom and policy of the law to suppose both best preserved when everything runs in its right channel, according to the original jurisdiction of every court; for, by the same reason that one court might be allowed to encroach, another might, which would produce nothing but disorder and confusion in the administration of justice. Therefore, it was always said, in all prohibitions, that the cause is drawn " *ad alium examen, contra coronam et dignitatem regiam.*" 8 Bac. Abr. 207.

The mode of proceeding to obtain the writ is by application to a superior court, setting forth, in a suggestion upon the record, the nature and cause of the relator's complaint, in being drawn *ad alium examen* by a jurisdiction or manner of process disallowed by the law of the land; upon which, if the matter alleged appears to the court to be sufficient, the writ of prohibition immediately issues, commanding the judge not to hold, and the party not to prosecute the plea. 3 Cooley's Blackstone, 113. The writ may be issued at the instance of the plaintiff or defendant to the unauthorized proceedings, or even

at the instance of a stranger to it. 7 Com. Dig. 141 ; 8 Bac. Abr. 211 ; *Thomas* v. *Mead*, 36 Mo. 232 ; *Mayo* v. *James*, 12 Grattan, 17.

As a writ of prohibition proposes only to prevent usurpation, and the unseemly conflicts between jurisdictions, which would necessarily arise, if there was not an adequate and speedy remedy for the usurpation, and also to save the citizen from having his rights drawn in question by a tribunal without capacity to adjudicate and enforce them ; the only inquiry presented by the application for the writ is, whether the proceeding complained of is before a tribunal having cognizance of it ; or, as is said by this court in *Ex parte Greene & Graham* (29 Ala. 58) : " Our power, under this application, is confined to the inquiry, Has the inferior tribunal assumed to act upon a matter, or upon the rights of a party, that could not be determined or proceeded against in that forum ? " The right involved in the unauthorized proceeding, whether it pertains to the one party or the other, is not the subject of inquiry and determination. No allegation that such right pertains to the relator is necessary. If it was, the writ could not issue at the instance of a stranger, who could not assert such right, and whose intervention would disclose that he did not have it. If an inquiry into the right could be indulged, a prohibition would be made to serve the purpose of a writ of error, or an appeal, and could never properly issue until the full merits of the case had been disclosed, and the injury it proposed to correct had been consummated. Therefore, it was unnecessary for the relator, in his application to this court, to have alleged that he was elected to the mayoralty of the city of Mobile ; and if the fact is, as supposed by PETERS, C. J., so averred as not to be issuable, the right of the relator to the writ of prohibition is not thereby affected. If he shows that a tribunal, not having the jurisdiction to inquire into his election, has drawn him before it to make the inquiry, then he presents a case for prohibition ; the injury which the writ proposes to correct, an encroachment of jurisdiction, exists.

It is not amiss, however, to say that I do not think the relator's application obnoxious to the objection taken by the chief justice — that it alleges, not the fact of his election, but his information and belief of that fact. It is certainly true, as a rule of pleading, that when the right of a party depends upon the existence of a fact, he must distinctly aver the fact itself, and an averment that he is informed and believes the fact to exist is not sufficient ; but it is equally true, that he may aver the existence of the fact on information and belief. *Nix* v. *Winter*, 35 Ala. 309. In other words, he may aver the fact, and state his information and belief as the source of his

[Reid v. Moulton.]

knowledge of it. In *Lucas* v. *Oliver* (34 Ala. 626), the facts were stated, with the additional words, " as your orators and oratrixes are informed and believe; " and this was deemed sufficient as an averment, not of the party's information and belief only, but of the fact itself. The averment in this application is, that the " petitioner was, as he is informed and believes, and therefore states, elected," &c. I cannot construe this as less than an averment of the fact of his election, and information and belief as the source of knowledge of it. If an allegation that the relator had received a majority or plurality of the votes cast at the election was essential, as the chief justice supposes, the allegation that he was duly elected must be deemed equivalent to such an averment, and to include it; for he could not have been duly elected, unless he had received such majority or plurality.

The proceeding of which the relator complains is pending in the chancery court of Mobile county, commenced by original bill, filed by Cleaveland F. Moulton, against the relator and Rufus Dane, sheriff of Mobile county. This bill alleges, in substance, that the complainant therein and the relator were opposing candidates for the office of mayor of the city of Mobile, at a municipal election in that city held on the 2d day of December, 1873; that the complainant received the larger number of votes, and was in fact duly and legally elected, but that the returns made by the inspectors do not declare the true result; that at one of the wards, or voting places, the returns made were falsely and fraudulently made, so as to falsify the result of said election; that ballots, cast for the complainant, were abstracted from the ballot-box, with the knowledge of the inspectors, and in pursuance of a conspiracy between them and other persons, and other ballots inserted in lieu of them, purporting to be cast for the relator; that the result, but for these frauds, would have shown the complainant's election by a majority of two hundred and fifty votes; that the election of the relator was, by reason of such frauds, declared by a majority of twenty-six votes; that said Dane, as sheriff, is by law the supervisor of said election, and it is his duty to open, compare, and count the ballots cast, declare the result, and give certificates of election to those elected; that he had taken the false and fraudulent returns aforesaid, and from them ascertained and declared the result of said election, and issued a certificate of election to the relator, Reid; that the charter of the city of Mobile provides that the election of municipal officers may be contested before the judge of the circuit or city court, but does not provide the manner in which it shall be tried, nor by what rules it shall be governed, nor for what causes it shall be made; and therefore the complain-

[Reid v. Moulton.]

ant concludes, it is impossible for him to contest the election of said Reid under the city charter. The bill alleges, also, that the city charter does not provide for a trial of the contest by a jury, nor for an appeal to a court having power to empanel a jury for a trial of issues of facts, and, therefore, its provisions as to a contest are unconstitutional; also, that the ballot-boxes, ballots, and poll-lists are in the possession of said Dane as sheriff, who threatens their destruction; that these are material evidence for the complainant, and should be preserved, that they may be produced at the trial. The prayer of the bill is for an injunction, restraining the relator from entering upon the office of mayor, or exercising any of the duties and functions of the office, and from interference with the complainant's right to that office; that the court will take jurisdiction of the whole case, and try the same; that the complainant may be declared duly elected mayor, and confirmed and continued in his office; that the defendant Dane be enjoined from permitting said ballot-boxes, poll-lists, &c., to be taken from his custody, or destroyed, and required to safely keep and preserve them, and to produce them when required; and for general relief. On this bill, the chancellor ordered a temporary injunction to issue, conforming to its prayer; and an injunction was issued in pursuance of his order.

In my view of this application, the material question is this: Has the chancery court jurisdiction of the matter in which it is thus proceeding? Unless we are compelled to answer this question negatively, the writ of prohibition cannot issue. On principle and authority, it seems to me impossible to give any other than a negative answer to the question. The whole object of the bill is to try the right to a municipal office; to ascertain and declare judicially the result of a municipal election. Whence does a court of equity derive jurisdiction of this matter? It cannot be asserted that it is a part of its original jurisdiction. The right claimed is legal, not equitable. The common law, careful to furnish an adequate remedy for the protection and enforcement of every legal right, gave the writ of *quo warranto*, or an information in the nature of a *quo warranto*, as the remedy for a usurpation or invasion of the office of a municipal corporation. Cole on Quo Warranto, 113; Dillon on Municipal Corporations, §§ 210, 680, 714; *Cochran* v. *McCleary*, 22 Iowa, 75; *Hulman* v. *Honcomp*, 5 Ohio St. R. 237; *People* v. *Carpenter*, 24 N. Y. 86; *Reynolds* v. *Baldwin*, 1 La. Ann. 163; *People* v. *Matteson*, 17 Illinois, 167. The right claimed being legal, not equitable, and the common law furnishing an adequate remedy for its enforcement, a court of equity cannot intervene, without a departure from the general principle, that it will not take jurisdiction of legal

[Reid v. Moulton.]

rights, where there is a clear, adequate, and complete remedy at law.

The supreme court of Illinois, in considering a question not differing in principle from that presented in this case, said : " Courts of equity assume jurisdiction, in cases where a wrong is done for which there is no plain, adequate, and complete remedy in the courts of common law. The origin of courts of equity was owing to the incomplete administration of courts of justice, to correct which they gained an establishment. They have, at all times, assumed the power only of enforcing the principles upon which the courts of law decide, where the powers of those courts, or their modes of proceeding, are insufficient for the purpose ; in preventing those principles, when enforced by the courts of law, from becoming, contrary to the purpose of their original establishment, instruments of injustice ; and of deciding on principles of universal justice, where the interference of a court of judicature is necessary to prevent a wrong, and the positive law is silent. Hence, as a general rule, where a court of law has jurisdiction, and its rules and modes of proceeding enable it to do adequate and complete justice, equity does not assume jurisdiction." On this principle, the court refused to restrain by injunction the election of municipal officers under an act of the legislature averred to be unconstitutional. The court declared that, if the law was unconstitutional, the remedy was by *quo warranto* to oust such officers after their election. *People, ex rel.* v. *Galesburg*, 48 Illinois, 485.

In the case of *Hagener* v. *Heyberger* (7 Watts & Serg. 104), a bill was filed, praying an injunction to restrain the defendant from exercising the duties of the office of school director, because of his acceptance of another and incompatible office. The bill was dismissed, the court holding that an injunction was a writ adapted to control and regulate officers in the discharge of their duties, when they are confessedly in office, rather than to try their right to hold and exercise their offices. The court declared, also, that an English court of chancery would not sustain an injunction to try the election or amotion of corporators of any description, but would leave that to the ordinary legal remedy.

In *Markle* v. *Wright* (13 Indiana, 548), the court held, that a suit for an injunction is not the remedy for obtaining possession of a county office, to which the complainant had been elected, and from which he is illegally excluded by a usurper.

In the case of *Cochran* v. *McCleary* (22 Iowa, 75), the court said : " In England, and in the different States in this country, the law, solicitous to furnish a remedy for every invasion of legal right, has provided that of *quo warranto*, or an information in

[Reid v. Moulton.]

the nature of a *quo warranto*, to determine the title of an officer
to his *office*, and to determine the right of any person or cor-
poration to exercise a public franchise. Unless the law is al-
tered by our statute, it is perfectly well settled, that questions
of this character cannot be tried and decided in any collateral
or indirect proceeding; as, for example, by a bill to enjoin.
*And the court of chancery goes so far as to hold that it will not
interfere, before a trial at law, in favor of an officer de jure,
against an illegal claimant, by enjoining the latter from ex-
ercising the functions of the office.* Upon this subject the au-
thorities speak a uniform language."

Independent of statutory provisions enlarging the jurisdiction
of a court of equity, it must be conceded, on principle and au-
thority, that it has not the jurisdiction which the chancellor is
exercising in this case. It will not be asserted that we have any
statute which, either expressly or by implication, confers such
jurisdiction. The section of the Code of 1852 defining equity
jurisdiction (Rev. Code, § 698) was, by many members of the
bar, deemed restrictive, taking away the original jurisdiction
where by statute any other tribunal could exercise it, and pro-
hibitory of all concurrent jurisdiction; and such was the opin-
ion of a learned chancellor. But the decision in the case of
*Waldron, Isley & Co.* v. *Simmons* (28 Ala. 629), settled the
question, in effect declaring that the statute is but an affirma-
tion of the preëxisting jurisdiction, neither enlarging nor di-
minishing it.

A municipal corporation, whether deriving its existence from
a special statute, or an incorporation under the general law,
is the subject of legislative creation. It exercises delegated
power, which, in the absence of the corporation, would reside
in, and be exercised only by the general assembly, or some
other department of the government. An appropriate defini-
tion of a municipal corporation, which has met with the ap-
proval of learned jurists, is found in *Cuddon* v. *Eastwick* (1
Salk. 192): "An investing the people of a place with the local
government thereof." Such corporations are created for civil
or political purposes. Its officers are mere agencies, through
which it exercises the powers conferred on it. They exist, not
for the benefit of the officer, or of any particular individual or
class, but for the public advantage. From the earliest history
of such corporations in this country, the principal offices have
been elective by those residing within the territorial limits over
which corporate powers are to be exercised, and who are quali-
fied voters under the constitution and laws of the State. Dil-
lon on Municipal Corporations, 174.

A municipal corporation being the subject of legislative crea-
tion, endued with powers pertaining to the government of the

[Reid v. Moulton.]

State, and its officers elective by popular vote, can a court of equity interfere with such election, either by restraining one claiming a municipal office from entering on its duties, or by an inquiry into the validity of an election, without obstructing and embarrassing the exercise of municipal power, which is but a part of the civil or political power of the State ? How can the court, if it shall appear on the final hearing that the temporary injunction in this cause was improperly granted, and a perpetual injunction is then refused, compensate the corporation, which is but the body of the electors, for the suspension of legitimate power ? What compensation can be made for the deprivation of municipal government, or the continuance in office, against the popular will legally expressed, of those finally ascertained to be usurpers ? Bonds, with penalties and sureties, may compel compensation to an individual, for an infraction or restraint of individual right. In the matter with which we are now dealing, individual right is lost in the higher public right. The office exists for public, not for individual benefit. The public, not the individual, is the chief sufferer. The loss of political or civil power is the great evil, and for this loss pecuniary compensation cannot be made. Its loss for a day, or for an hour, is an irreparable injury ; for that time it cannot be recalled, or restored. If a court of equity can exercise the power which the chancery court is assuming in this case, it may embarrass every municipality in the State in the exercise of its legitimate powers, and draw to itself the supervision and control of every municipal election.

The policy of the legislature, in the creation of municipal corporations, has been to provide very limited terms for municipal offices, but seldom exceeding one year. Courts of equity, as organized in this State, are held in a number of the counties but once in a year. It is obvious that, if they can exercise the power of supervising and controlling municipal elections, a large part of the term of a municipal office must expire before they can finally adjudicate and determine the controversy. The public mind is kept in a state of feverish uncertainty, as to who shall rightfully exercise municipal power; and a temptation is offered to every defeated candidate for municipal office, if he is as incumbent entitled to hold until his successor is qualified, to prolong his official term by litigation. It is a sad and unfortunate chapter of public history, that popular elections have, of late years, been marked by reckless, unreasoning partisanship; a careless (if not too often corrupt) exercise of the right of suffrage; an insatiable, degrading thirst of office, power, and place, and, as an inevitable consequence, frauds which are criminal, utterly destructive, and designed to be so, of the purposes of such elections, — a fair, honest expression of the will

[Reid v. Moulton.]

of the people. It requires no prophetic power to foresee that, unless there shall be a radical revolution, coming from the people, riotous violence will soon take the place of fraud, and an election will be but a wager of battle between contending parties. Judicial tribunals can contribute to the suppression of existing, or the averting of apprehended evils, only by a steady adherence to the law as it is written, and to the compulsory adoption by those seeking their interference of known and usual remedies. If they countenance a resort to an unusual remedy, dilatory in its character, prolonging the power of the one party or the other, the dangers are at once magnified, because the partisan mind, already inflamed, will regard it as affording countenance to the wrongs of which they complain.

This case is an illustration. If, pursuing the charter, the election had been contested, the contest would have been determined before any considerable portion of the term of office had expired; the public mind would have been quieted; the passions engendered by the canvass would have subsided; the rightful officer, secured by the power of a judicial decision, would have been in the exercise of his rightful functions; and respect for law, and for the constituted tribunals of the land, begetting obedience and confidence, would have been inspired.

By the charter, or act incorporating the city of Mobile, as amended, the terms of office of the mayor, aldermen, common councilmen, and other officers expressly provided for, is limited to one year, and until their successors are duly elected and qualified. Session Acts 1869–70, p. 453, § 11. The charter as originally enacted, and yet remaining of force, provides for a contest, and the determination of the validity of any municipal election in the city, before the judge of the circuit court, or the judge of the city court. This contest must be commenced within fifteen days after the election. The jurisdiction conferred, it will be observed, is not conferred on the circuit court, or the city court, which have but semi-annual terms, and are capable of exercising jurisdiction only in term time. The legislature, solicitous to avoid the delay incident to conferring the jurisdiction on courts, whose terms are held only at stated intervals, and whose jurisdiction can only be exercised in term time, gave it to the judge, who could sit at such times as he might prescribe, or such as the exigencies of the case might require. Admitting to its fullest extent the general rule, that special statutory remedies are cumulative, and do not exclude the ordinary common-law remedies, or the ordinary jurisdiction of the courts, unless such is the manifest intention of the legislature, it nevertheless seems to me clear, that the intention of the legislature in providing this remedy can only be consummated by regarding it as exclusive. No right of appeal was given,

[Reid v. Moulton.]

and none was intended. It was within legislative discretion and power, in creating a municipal office, and providing the mode of contesting the validity of an election to such office, to give or withhold an appeal from the decision of such contest. That an appeal was not given, is an indication that the remedy was designed to be exclusive, and the decision final. Public policy, and the real interests of the parties to such contest, demand that they should be determined with the least possible delay and expense. If these had not been controlling considerations with the legislature, it is presumable that jurisdiction would have been conferred on a court, and not on a judge. Such was the decision of the supreme court of Texas, on a similar statute. O'Docherty v. Archer, 9 Texas, 295. Again, it is a principle too firmly established to be controverted, that when a statute creates a right, or confers the means of acquiring it, and prescribes a remedy for its enforcement, the statutory remedy is exclusive, and must be pursued. Sedgwick on Stat. & Const. Law, 94, 402; Dudley v. Mayhew, 3 Comst. 9; Smith v. Lockwood, 13 Barbour, 209; State v. Marlow, 15 Ohio, 114; Commonwealth v. Garrigues, 28 Penn. 9.

The supreme court of Pennsylvania, in a case similar to this, said: "It is a well settled principle of the common law, and of common sense, that where a statutory remedy is given with a statutory right, the common-law remedies are withheld." Commonwealth v. Leech, 44 Penn. 332. The court further said: "Does the allegation of fraud in the election, or in the conduct of the return judges, or in the conduct of any of the candidates in procuring votes, or in obtaining the certificate, give rise to any other remedy? for all these are matters that can be fully tried in the special mode provided by the statute, and all of them are intended to be tried in that way. It would be quite absurd to suppose that the legislature had provided a mode of trying contested elections, and that by it the frauds that may occur, or be charged to have occurred in them, or in any part of the process of the election, cannot be tried. It would be quite absurd to say that the legislature has given the mode of trying title to an office, which cannot try whether the title of either party is tainted with fraud; for then the mode provided would almost always be inadequate and fruitless. The authority that tries the title, must have authority to try all averments that are made for or against it, that are necessary to the decision. Does the averment that the relator was thrown off his guard by the defendant's declaration that he would not use his certificate, and thus failed to apply to court to prevent the defendant from using it — does this make a case that the court is authorized to hear and decide? Clearly not. We cannot, of course, draw to this court jurisdiction of

the case, on the ground of the allegation that the defendant presented a fraudulent certificate, and was fraudulently admitted on it; for, if we should do this on such grounds, we should open the way for the admission of all cases of contested elections, and should be fairly chargeable with usurpation.

"The argument went a little out of the case presented by the information, in referring to the other contested seats in the same council, and in alleging that, unless we interfere, the political party which, in right, is entitled only to a minority of members, will have a majority of them, and will therefore have the control in the election of city officers. If this be so, it is much to be regretted; but we have no authority to inquire of the fact. It must be very plain, to every thinking mind, that there is nothing in this suggestion that tends to prove that the court has any authority to interfere. Where the whole duty of judging of any matter is committed to others, it would be sheer usurpation for us to take the decision out of their hands. Plain morality forbids it. The evil complained of can be only transient. But it is not so with the decisions of this court. They live after us. They stand recorded as examples to be followed in the future. And we desire it to stand as an example, that we judge no man in matters wherein we are not authorized to judge him; that we assume no authority not given to us by the constitution and laws, even to effect a purpose that may appear greatly beneficial. We do good when we exercise a vested authority in the correction of wrong, though we may sometimes perform our duties erroneously. We do evil when we usurp authority, even in order to do good. If the election law is defective, the legislature is competent to amend it; we cannot do it. And if we set aside the law of the land, in order to effect a purpose, we become merely arbitrary."

In the case of *Hulseman* v. *Rems* (41 Penn. 396), a bill was presented for an injunction, to restrain the defendants from the use of a certificate of election as members of the common council of the city of Philadelphia issued to them, on the ground that the return judges had met at an unusual place, and had counted among the returns certain fraudulent and forged certificates, purporting to be returns of the votes cast by certain military companies in the service of the United States. The injunction was refused, and the court, in refusing it, in a carefully considered opinion, so fully decide the question under consideration, that I make a lengthy quotation from it. The court said:

"We have, therefore, no ground left for our interference, but the single one that the return judges included in their enumeration returns purporting to be from three companies of volunteers, which were mere forgeries. We admit that, in the evidence before us, it appears clear to us that those returns are forgeries,

and that it is only by their inclusion in the enumeration that the defendants have obtained certificates of their election. We admit, therefore, that the evidence proves that these certificates of the election of the defendants are founded in manifest fraud, the forgery of some unknown person ; but we do not find that the defendants had any hand in it, and we trust they had not." [In the case before us, the bill, though abounding with allegations of fraud, nominates no persons, save the inspectors at one of the voting places, as guilty of the fraud, and abstains from imputing to the defendant Reid, or his co-defendant Dane, any connection with, or participation in it.] " Can we, on this account, interfere, and declare the certificates void ? We think not. According to our laws, the election has passed completely through all its forms ; the result has been, in due form, declared and certified ; and the defendants have received their certificates of election, and are entitled to their seats as members of the common council. The title-papers of their offices are complete, and have the signatures of the proper officers of the law ; and if they are vitiated by any mistake or fraud in the process that has produced them, this raises a case to be tried by the forms of a ' contested election,' before the tribunal appointed by law to try such questions, and not by the ordinary forms of legal or equitable process before the usual judicial tribunals. It is part of the process of political organization, and not a question of private rights ; and therefore the constitution does not require that the courts shall determine its validity. The law has appointed a special tribunal to try just such a question as this ; and we can have no right to step in between the case and that tribunal, and alter the returns of the election judges, and annul their certificates. Plain as the fraud appears, and earnestly as we condemn it as citizens, it is no part of our functions as a court to sit in judgment on it. The common council is the proper tribunal to try cases of contested elections relative to its own members ; and there the fraud and forgery must necessarily be tried and decided with final effect. They are appointed by law to try the whole case, and they alone can try it. We decided this last year at Philadelphia, in the case of *Commonwealth* v. *Baxter* (11 Casey, 264), a case from Bradford county, where a commissioner of highways had received a regular certificate of election, and where we decided that it could be avoided only by a regular process of a contested election case. Perhaps, that case may be found worthy of examination. If, in that way, we suffer a gross fraud to pass through our hands without remedy, it is not because we have any mercy for the fraud, but because we cannot frustrate it by any decree of ours without an act of usurpation. Another tribunal is appointed to administer the remedy, and we believe that, on

[Reid v. Moulton.]

proper application, it will administer it rightly, according to the evidence it may have. And if we have doubts of this, we should still not be justified in interfering."

We must be prepared to declare these decisions grossly incorrect expositions of the law, or hold that the court of chancery is, in the proceeding of which the relator here complains, usurping jurisdiction withheld from it by law — "judging wherein it is not authorized to judge," assuming authority not given to it by the constitution and laws. Allegations of fraud, a pretence of respect for the purity of elections, and a desire to give effect to the popular will, however strongly expressed by a pleader, cannot hide the usurpation. If fraud has been committed — if the purity of an election is contaminated — if, by these means, the popular will is suppressed, the law appoints the tribunal to prevent the fraud, and to vindicate the purity and truth of the election. Obedience to law is the highest evidence a judicial tribunal can afford of its respect for the popular will, fairly and legally expressed; for the law is the highest and most conclusive expression of the sovereign will.

It is scarcely necessary to notice the allegations of the bill that, as the statute does not declare the causes of contest, or specially prescribe the mode of proceeding, the remedy it provides is inadequate. It cannot be seriously doubted, that whatever is a sufficient ground of contest of an election under the general law, would be a sufficient ground of contest under the statute. Illegality, or irregularity in the conduct of the election, affecting its result, or fraud that deprives him who receives the larger number of legal votes of the office to which he was thus elected, would vitiate the election as effectually as if they had been specially nominated as grounds of contest. The rule is, whenever the provision of a statute is general, everything necessary to make such provision effectual is supplied by the common law; and whenever a power is given by a statute, everything necessary to make it effectual is given by implication; for the maxim is, *Quando lex aliquid concedit, concedere videtur et id per quod devenitur ad illud.* 9 Bac. Abr. 219–20. Nor is it necessary to pay any consideration to the averment that the charter, in not providing for a trial of the contest by a jury, is unconstitutional. If this could be conceded, it would scarcely afford a reason for an appeal to a court of equity, of which a jury is not a constituent, and in which a trial by jury is impossible. Municipal offices are of legislative creation; and it is the well settled law of this State, that the constitutional guaranty of a trial by jury does not extend to such offices. That guaranty is, in its operation, confined to cases known to the laws, and to which trial by jury was extended, at the

[Reid *v.* Moulton.]

adoption of the constitution. *Boring* v. *Williams*, 17 Ala. 510; *Tims* v. *The State*, 26 Ala. 165.

The result I have reached is, that the court of chancery has not jurisdiction of the proceeding of which the relator complains, and that the law commits to another tribunal exclusive jurisdiction of the matters involved in that proceeding. The majority of the court, as I understand them, not expressing an opinion on this question, refuse the writ of prohibition, on the ground that it is an extraordinary remedy, "allowed of grace and not of right;" that it is a "discretionary writ, and will not be granted unless the applicant who claims the office has no other remedy to which he can resort for his protection. From the judgment of the chancery court, here sought to be prohibited and restrained, an appeal lies to this court. Then, the petitioner has a sufficient remedy by appeal, without invoking the aid of this extraordinary proceeding." I pass over the declaration that a prohibition is "allowed of grace, and not of right," with no other comment than that, in my judgment, legal remedies are, in this country, matters of *right*, and not of *grace*, — are not more dependent on judicial will or favor than is legal right itself. Whenever a legal right exists, the law furnishes a legal remedy adequate to its enforcement, which courts cannot withhold. I fully concur in what is said by C. J. CHILTON, in his dissenting opinion in *Ex parte Smith*, 23 Ala. 107: "The awarding a writ of prohibition is a matter discretionary; that is, from the circumstances of the case, the superior courts are at liberty to exercise a *legal discretion herein, but not an arbitrary one*, in refusing prohibitions, when in such like cases they have been granted, or when by the laws and statutes of the realm they ought to be granted." The rule to be deduced from the authorities is, that an extraordinary remedy, such as a prohibition, will not be granted by the courts, when the party has an ordinary remedy adequate to his protection and the enforcement of his rights. He may show a case to which the extraordinary remedy named would be applicable; but, if the ordinary remedy is adequate, the court has a discretion in granting or withholding it, and this is the extent of judicial discretion. *Ex parte Brandlacht*, 2 Hill, N. Y. 367, and authorities cited in note; *State* v. *Hudnell*, 2 Nott & McC. 419; *State* v. *Judges*, 11 Wis. 50. A majority of the court are of the opinion, that the relator has a sufficient remedy by appeal, if the chancellor proceeds to a final decree against him. If this is a sufficient reason for refusing a writ of prohibition, then it should be announced as a rule, that the writ will never be awarded when the proceedings are pending before a tribunal whose judgments or decrees can be revised on appeal. A want or an excess of jurisdiction would be fatal to such judg-

[*Reid v. Moulton.*]

ments, when presented on appeal by a party against whom the court proceeded *in invitum.* An appeal can be maintained only by a party who is injuriously affected by the decree or judgment. A writ of prohibition, as we have seen, may be awarded to either party, plaintiff or defendant to the unauthorized proceeding, without regard to the question of injury, except so far as it is an injury to have a judicial controversy drawn before a tribunal incapable of determining it. But is an appeal an adequate remedy for the wrong of which the relator complains? The speediest mode of prosecuting an appeal he could pursue, would be submitting a motion to dissolve the injunction, and, if that was refused; taking an appeal to the next term of this court. That appeal we are by law commanded to hear and determine in precedence of all other cases. It is heard, and the bill dismissed for want of jurisdiction in the chancery court. In the mean time, half of the term of the relator's office has expired, during which, by the usurpation of the court of chancery, he has been deprived ·of his office. A remedy subjecting him to such deprivation cannot be deemed adequate. No compensation can be made to ˙him for the deprivation. The injunction bond may be a security on which he can found an action for the recovery of the fees or salary incident to the office during the deprivation ; but the office is one of high public trust, and he cannot be compensated for the loss of the opportunity of discharging this trust according to the will of those who conferred it. The people conferring the trust have, by judicial usurpation, been deprived of representation by the person elected to exercise the trust. Their civil and political power has been shorn of its strength — has been defied and thwarted by a judicial proceeding in form, which ˳ was in fact usurpation. No remedy prolonging such injury, private and public, can be deemed adequate.

The same rule obtains as to the grant of a prohibition and a *mandamus.* As a general rule, a *mandamus* is not awarded if the party has another legal remedy. This rule is always understood to relate to a specific remedy, *which will place the party in the same* situation he was before the act of which complaint is made. *Etheridge* v. *Hall,* 7 Porter, 47 ; *Ex parte King,* 27 Ala. 387. It is unnecessary to repeat, that an appeal cannot restore the relator to the situation in which he was when the chancery court interfered ; that it cannot recall the part of his official term which has expired, nor return the civil and political power which has been invaded. There is no point of view, in which I have ˙been able to consider this case, not leading me to the conclusion, that a clearer case for a writ of prohibition could not be presented.

What is said in the opinion of the court about the want of

[Holman *v.* Lock's Administrator.]

power in this court to summon a jury if the facts should be disputed, if of any force, is equally relevant to any application that could be made to this court for the writ of prohibition. But it is not of any force, for the matter complained of appears on the record, — the bill filed in the court of chancery, and the proceedings had thereon. Of consequence, there cannot be a disputed fact to try. No affidavit, or other evidence of the truth of such matter than is found in the record, is necessary, or can be received. *State* v. *Hudnell*, 2 Nott & McC. 419.